## Schultheis v. Sellers, Appellant.

*Promissory notes—Action by indorsee against maker—Fraud—Burden of proof—Affidavit of defense.*

1. In an action on a promissory note the holder is required to show the consideration he paid for it and how it came into his hands where the defendant proves that it was put into circulation fraudulently.

2. To support an action by the indorsee of negotiable paper against the maker, in the first instance it is only necessary for the plaintiff to

put the paper in evidence, then, if the defendant proves that the paper was put in circulation by fraud, or undue means, his defense will prevail, unless the plaintiff establishes that he acted fairly and paid value.

3. In an action by an indorsee against the maker of a promissory note, the plaintiff averred in his statement that he was a bona fide holder for value before maturity of the note, and that he took it without any notice of any defects or infirmities therein. The defendant filed an affidavit of defense in which he denied the averments of the statement, and charged that the payee named in the note acting as agent of a publisher, induced the defendant to sign the note as part consideration for a set of books, which the payee acting as said agent "falsely and fraudulently represented to be a special, limited and extra-illustrated edition," worth a very large sum stated; that defendant was not an expert of the value of the books, and relied entirely on the representations made to him, that he gave two notes, one of which he paid, and that the other was the note in suit; that prior to maturity of the last note he discovered that the representations in reference to the books were false, and that immediately upon such discovery he notified the payee that the books were not as represented, requested him to return the money already paid and the unpaid note, and tendered a return of the books. He also averred that the plaintiff had full knowledge of the transaction, and took the note to aid the payee in the collection thereof. *Held*, that the affidavit of defense was sufficient to prevent judgment.

Argued Jan. 5, 1909. Appeal, No. 137, Jan. T., 1908, by defendant, from order of C. P. No. 1, Phila. Co., Dec. T., 1907, No. 2,813, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Henry Schultheis v. Alexander Sellers. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Assumpsit by indorsee against maker of a promissory note.

The averments of the affidavit of defense are set forth in the opinion of the Supreme Court.

The court made absolute rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*Hampton L. Carson,* with him *John Kent Kane,* for appellant.—Where there is an averment in the affidavit of defense that the promissory note sued upon was procured from the maker by fraud and by misrepresentation, or that it was

fraudulently circulated, the holder should be put to proof that he is a bona fide holder for value without notice of the fraud, and the case should go to the jury: Lerch Hardware Co. v. Third Nat. Bank, 109 Pa. 240; Reznor v. Supplee, 81 Pa. 180; Moeck v. Littell, 82 Pa. 354; Wolf v. Jacobs, 187 Pa. 260; Union Trust Co. v. Banger, 8 Pa. C. C. Rep. 99; Real Est. Investment Co. v. Russel, 148 Pa. 496; Loeb v. Mellinger, 12 Pa. Superior Ct. 592.

*Percival H. Granger,* with him *J. Howard Reber,* for appellee. —The defendant and Wilson were strangers to each other at the commencement of the transaction, and no relation of confidence existed between them. Defendant could have easily protected himself by securing expert advice as to the value and quality of the books before giving the notes, if he had so desired. Instead of doing so, he waited more than two months and in the meantime paid one of the notes, amounting to $1,500. The doctrine of caveat emptor applies: Griffith v. Herr, 17 Pa. Superior Ct. 601; Fox v. Paynter, 1 W. N. C. 373; Byrne v. Stewart, 124 Pa. 450; Bailey v. Waterhouse, 3 W. N. C. 275.

An active duty rested upon defendant to use due diligence in examining the books upon their arrival, and if found inferior to promptly and unequivocally reject them. He could have no justifiable reason for waiting more than two months before having the books examined by experts. Having accepted the books and paid one installment of the purchase money, he is liable for the balance thereof: Money Weight Scale Co. v. Woodward, 29 Pa. Superior Ct. 142; Leaming v. Wise, 73 Pa. 173; Morgan v. McKee, 77 Pa. 228; Tete Bros. v. Eshler, 11 Pa. Superior Ct. 224; Taylor v. Saurman, 110 Pa. 3.

It is submitted that the affidavit of defense is clearly insufficient as between the indorsee, plaintiff, and the maker, defendant: Phelan v. Moss, 67 Pa. 59; State Bank v. McCoy, 69 Pa. 204; Lancaster County Nat. Bank v. Garber, 178 Pa. 91; Forepaugh v. Baker, 21 W. N. C. 299; Second Nat. Bank v. Morgan, 165 Pa. 199; Battles v. Laudenslager, 84 Pa. 446; Newbold v. Pennock, 154 Pa. 591.

OPINION BY MR. JUSTICE MESTREZAT, March 1, 1909:

This was an action of assumpsit by an indorsee against the maker of a promissory note. The learned court below entered judgment for want of a sufficient affidavit of defense, and the defendant has taken this appeal. We think the court was in error and that the case should have been sent to a jury. The question is not whether the defendant is liable on the note in suit, but whether the averments in his affidavit of defense are sufficient to put the plaintiff, an indorsee, to proof whether he acquired the note before maturity, in good faith, and for value. If the affidavit meets this requirement, it defeats the right of the plaintiff to a summary judgment, and requires the court to send the case to a jury.

Almost a century ago, in Holme v. Karsper, 5 Binney, 469, it was held in an action on a promissory note that the holder was required to show the consideration he paid for it and how it came into his hands where the defendant proved that it was put into circulation fraudulently. This rule has been recognized and enforced in subsequent decisions. In Lerch Hardware Co. v. First National Bank of Columbia, 109 Pa. 240, it is said in the opinion of the court (p. 244): "To support an action by the indorsee of negotiable paper, against the maker, in the first instance it is only necessary for the plaintiff to put the paper in evidence. Then, if the defendant proves that the paper was put in circulation by fraud or undue means his defense will prevail, unless the plaintiff establishes that he acted fairly and paid value." This is now the statutory declaration of the law, sec. 59 of the Act of May 16, 1901, P. L. 194, providing: "Every holder is deemed, prima facie, to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course."

Applying this doctrine to the case in hand it will be observed that the affidavit of defense meets every requirement. The payee of the note was the agent of a publisher and importer of books doing business in the city of New York. He sold to the defendant a set of Smith & Elder's edition of the works of

Thackeray in payment of which the defendant gave two promissory notes, each for $1,500. When the first note became due it was paid. Before the maturity of the second and last note the defendant, as he avers, ascertained that the payee had misrepresented the books to him, and he declined to pay the second note. This action was then brought by the plaintiff, an indorsee of the note. In his statement the plaintiff avers that he is a bona fide holder for value before maturity of the note and that he took it without any notice of any defects or infirmities therein. He also avers that the defendant had notice that he acquired the note in the ordinary course of business for a good and valuable consideration. The affidavit of defense denies these averments. It alleges that Charles Y. Wilson, the payee of the note, acting as the agent of the publisher and importer, induced the defendant to sign the note as part consideration for the books which the payee acting as said agent "falsely and fraudulently represented to be a special limited, extra-illustrated edition of Smith & Elder's Thackeray, fully worth the sum of $3,000, which he, the said Sellers, could subsequently sell for a very much larger sum if he was so inclined; that defendant is not an expert in the value of books, but bought the same for his private library, relying entirely on the representations of the said Charles Y. Wilson as agent of the said R. G. Newbegin as to the special alleged features of said books, as being specially illustrated, printed, and limited in number." The affidavit further avers that prior to the maturity of the last note the defendant "discovered, by submitting the said books to the examination and judgment of experts, that the said books were not as represented; that instead of being unusual and special they were of a kind well known to booksellers, containing no special features, nor being limited in the number of copies, but were similar to many other copies of said books, differing only in cheap and tawdry details, and were worth in the market about the sum of $520;" that thereupon he immediately notified the agent of Newbegin that the books were not as represented, requested him to return the $1,500 already paid, also the note which was still unpaid, and tendered a return of the books.

The affidavit further avers that the plaintiff knew that Wilson was the agent of Newbegin, the seller of the books, that he had no authority to part with the note and had no ownership in the same, and further: "This defendant believes, and expects to be able to prove on the trial of this case, that the plaintiff was requested to act as collector of said note for the said C. Y. Wilson as agent for the said R. G. Newbegin, and that he the said plaintiff took said note merely to aid the said C. Y. Wilson as agent for the said R. G. Newbegin in the collection thereof, and thus avoid defendant's defense."

It will be observed that the affidavit does not aver simply a misrepresentation as to quality, soundness, value or other condition of the books, which would bring it within the rule of caveat emptor, and would not be sufficient to avoid the contract. Nor was the representation simply "dealer's talk" or a mere opinion of the books offered for sale. On the contrary, the averment is that the books sold were represented by the agent who took the note "to be a special, limited, extra-illustrated edition;" and that the representation induced the defendant to purchase the books. This representation, as averred in the affidavit, was entirely false and untrue. The matters thus represented to the defendant gave value to the books, and if they were false it is clear that the notes given in payment therefor were obtained by "fraudulent and undue means," and are a defense between the original parties to the note. The true character of the special features of the book, represented by the agent as making them valuable, could not be discovered by an examination or an inspection by the defendant. He was not a dealer in books or an expert in that line, as he avers, and could not determine whether the edition he purchased was special, limited, or extra-illustrated, as the agent represented it to be. A book of this character is not an article of general commerce about which the general public may, on inspection, detect a false representation. It is not a commodity whose market price is familiar to the public or can by reasonable effort be ascertained. An examination of the books by an expert was necessary to determine the truthfulness of the vendor's representations, and defendant was, therefore, compelled to rely upon the representations of the

agent who, acting for his principal, is presumed to have special knowledge qualifying him to give correct information on the subject.    Under such circumstances, the purchaser is entitled to protection against the fraud of the seller: Smith on the Law of Fraud, sec. 69; Kost v. Bender, 25 Mich. 515; Picard v. Mc-Cormick, 11 Mich. 68; Price v. Lewis, 17 Pa. 51; Smith, Kline & French Co. v. Smith, 166 Pa. 563.   In reversing the court below in the last cited case and holding the affidavit to be sufficient, it was said (p. 569): "What the defendant set up in her affidavit is not a mere opinion or even a false representation as to value, or market price, or other matter of general knowledge which the vendor was bound to know or inquire about, but an explicit, circumstantial misstatement of a fact conducing and intending to influence the vendor's action, and whose falsehood she could not reasonably detect."

There is nothing in the contention that Newbegin was relieved from the false representations of his agent, Wilson, because there is no allegation that Wilson was an expert and knew that his representations as to the character and quality of the books were false, or that Newbegin authorized Wilson to make the representations.   The affidavit avers that Wilson was the agent of Newbegin in selling the books and taking the notes, and Newbegin cannot affirm the action of his agent in making the sale and not assume responsibility for his representations: Keough v. Leslie, 92 Pa. 424.   Nor is there any merit in the argument of the plaintiff's counsel that the defendant is guilty of laches.   The affidavit avers that the defendant notified Wilson and Newbegin immediately after he discovered the fact that the books he had purchased were not as represented.   There was no delay by the defendant, so far as the record discloses, that would defeat the defense he sets up here if otherwise good.

The judgment of the court below is reversed with a procedendo.