BANK OF AMERICA NATION-
AL TRUST AND SAVINGS
ASSOCIATION

v.

Arthur A. ROCCO, Gilbert S. Parnell,
First National Bank of Indiana, and
Federal Reserve Bank of Cleveland,

First National Bank in Indiana, Appel-
lant.

BANK OF AMERICA NATION-
AL TRUST AND SAVINGS
ASSOCIATION

v.

Arthur A. ROCCO, Gilbert S. Parnell,
First National Bank in Indiana, and
Federal Reserve Bank of Cleveland,
Gilbert S. Parnell, Appellant.

Nos. 11526, 11536.

United States Court of Appeals
Third Circuit.

Reargued Jan. 9, 1957.

Decided Feb. 5, 1957.

Rehearing Denied March 12, 1957

Harvey A. Miller, Jr., Pittsburgh, Pa. (Harvey A. Miller, J. Lee Miller, Pittsburgh, Pa., William E. Britton, San Francisco, Cal., on the brief), for First National Bank in Indiana.

Edward Dumbauld, Uniontown, Pa. (John Duggan, Jr., Pittsburgh, Pa., on the brief), for Gilbert S. Parnell.

Robert L. Kirkpatrick, Pittsburgh, Pa. (T. W. Pomeroy, Jr., Robert L. Becker, Jr., Kirkpatrick, Pomeroy, Lockhart & Johnson, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

These cases are before this Court on remand from the Supreme Court of the United States, Bank of America Nat. Trust & Savings Ass'n v. Parnell, 1956, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93. The original suit was brought to recover the proceeds of certain bonds guaranteed by the United States and alleged to have been stolen from the plaintiff. It was further alleged that the bonds were paid by the Federal Reserve Bank of Cleveland to the defendant, First National Bank in Indiana, Pennsylvania, which in turn paid the proceeds to the defendant, Parnell, who in turn turned over all or part of the money to the defendant, Rocco. The Federal Reserve Bank of Cleveland was also an original defendant but was dismissed during the litigation. Rocco had judgment given against him but did not appeal. At the trial in the district court judgment was also given against Parnell and the Indiana Bank. When the case came to this Court the judgment was reversed, 1955, 226 F.2d 297.

The case was heard by the full court which divided four to three. The difference between majority and minority was with regard to whether federal or state law applied as to the burden of proof to establish one a holder in due course of a negotiable instrument. The majority of the court thought that Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838, required the application of federal law and that the federal rule differed from that in Pennsylvania. The minority believed that since this was but an action between individuals, in which the United States was not concerned, the state law controlled. The Supreme Court, in holding that the Clearfield case did not apply, said:

> "The present litigation is purely between private parties and does not touch the rights and duties of the United States. The only possible interest of the United States in a situation like the one here, exclusively involving the transfer of Government paper between private persons, is that the floating of securities of the United States might somehow or other be adversely affected by the local rule of a particular State regarding the liability of a converter. This is far too speculative, far too remote a possibility to justify the application of federal law to transactions essentially of local concern." 352 U.S. at pages 33, 34, 77 S.Ct. at page 121.

The case was, therefore, remanded to this Court to determine the law of Pennsylvania and to see whether it was correctly applied at the trial to the facts brought out in evidence. This necessarily will take us over some of the ground covered in our original discussion in both majority and minority opinions.

## I. The Pennsylvania Law.

The governing statute at the time the transactions herein took place was the Negotiable Instruments Law. The bonds were bearer paper. Under the statute one who is in possession of negotiable paper payable to bearer is a holder. Negotiable Instruments Law, § 191; Pa.Stat.Ann. tit. 56, § 492 (Purdon 1930). Rocco, Parnell and the Indiana

Bank were all holders under this definition. Not only that, but they were persons to whom the instrument had been negotiated. Section 30 of the Negotiable Instruments Law states:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder, completed by delivery." Pa.Stat.Ann. tit. 56, § 81 (Purdon 1930).

Now we come to the provision of the law that contains the controlling language for this case. That is Section 59 of the Negotiable Instruments Law and here is the appropriate section as it appears in Purdon's:

"Burden of proof when title is defective

"Every holder is deemed prima facie, to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title." Pa.Stat.Ann. tit. 56, § 139 (Purdon 1930).

This section has been applied in almost innumerable law suits, as an inspection of any one of the books on the Negotiable Instruments Law will show. The point is made on behalf of the defendants that in this case we have an action for conversion of stolen instruments and not a suit against one of the parties thereon. The argument is pressed that the cited section refers to actions on the instrument only and not to such a case as this. Filosi v. Crossman, 1930, 111 Conn. 178, 149 A. 774, is cited in support of this argument. The language of Chief Justice Wheeler does support it.

But we are dealing only with Pennsylvania law in this particular phase of the inquiry. In Schultheis v. Sellers, 1909, 223 Pa. 513, 72 A. 887, 22 L.R.A.,N.S., 1210. Mr. Justice Mestrezat pointed out that almost a century before that:

" * * * it was held, in an action on a promissory note, that the holder was required to show the consideration he paid for it and how it came into his hands, where the defendant proved that it was put into circulation fraudulently. This rule has been recognized and enforced in subsequent decisions." 223 Pa. at page 516, 72 A. at page 888.

The quotation just made is applicable to a suit upon the instrument and does not precisely meet the defendants' point. But First National Bank of Blairstown v. Goldberg, 1941, 340 Pa. 337, 17 A.2d 377 does meet it. Mr. Justice Stern says for the court:

"It was incumbent upon plaintiff to prove only its ownership and loss of the bonds, and the burden would then have shifted to defendants to show that they came into possession of the securities under such circumstances as to relieve them from liability for a conversion." 340 Pa. at page 340, 17 A.2d at page 378.

In the Goldberg case the court came to the conclusion that under the proof the defendant was entitled to judgment. But the application of the law seems to us very clear. The discussion in the opinion referring to the Restatements of Agency and Torts, on which the appellants rely, is all based on the hypothesis of the good faith of the defendants in handling a negotiable instrument.

Again in Brubaker v. County of Berks, 1955, 381 Pa. 157, 112 A.2d 620, we have the rule of the Negotiable Instruments Law applied in a case where the suit was not upon the instrument. The same application of the statute was made as in the Goldberg case.

We find no difficulty in determining Pennsylvania law which is in accord with the majority rule prior to the Negotiable Instruments Law and the overwhelming

weight of authority since. The burden of proof set out in Section 59, above quoted, is applicable in this case.

## II. The Case for the Jury.

█ As to Parnell, let us quote from the majority opinion when the case was here before. It will be remembered that the majority were going on the theory that the plaintiffs, not the defendants, had the burden on the issues of good faith and lack of value. Nevertheless, the Court said (as to Parnell):

"There was evidence which, if believed, would sustain the jury's verdict that he acted in bad faith. From Rocco's testimony, the jury could have inferred that Parnell's fee for cashing the bonds was extremely high, being approximately ten per cent of the value of the bonds. A fee of five or six thousand dollars for the mere transmittal of bonds for redemption would be sufficient evidence from which a jury could find bad faith." 226 F.2d at page 302.

With the burden of proof upon Parnell, not the Bank of America, the result is **a** fortiori.

As to the Indiana Bank, we think that there is enough evidence to support the jury's verdict, remembering that the burden is on that Bank to prove that it was a holder in due course. The Bank's then cashier admitted that he knew that the bonds had been called. The circumstances with regard to the negotiation were such as to arouse some suspicion. The two batches of bonds here concerned and one earlier had been collected by the bank on behalf of Parnell. Each time notification was given him by telephone by the same bank cashier. Each time he received a cashier's check and proceeded to cash the check in small bills forthwith. These items, of course, are not conclusive.

But it is to be remembered that the burden is on the bank. Its then cashier testified that he had no notice of any defect of title. His memory was vague on many surrounding circumstances concerning the transactions. That in itself is not enough to prove him dishonest since the transactions occurred some time before trial. But the jury saw the witness and heard his testimony. They had the fact, introduced in rebuttal, that he had been convicted of a felony of embezzlement. This was introduced without fanfare and whether it influenced the jury's consideration of his testimony we cannot know. The jury was not compelled to believe this bank officer. We have reread the testimony on this point. It does not justify setting aside a verdict against the party who had the burden of establishing good faith and lack of notice.

## III. Joint and Several Tortfeasors.

█ At the first hearing of the case here the defendant bank raised the question of liability under Pennsylvania law of joint and several tortfeasors. This point was taken up in the dissenting opinion but not covered by the majority opinion since the majority was not called upon to decide it. The Supreme Court, however, has sent the case back here to determine the undecided points. And so we repeat pretty largely what was said in the dissenting opinion.

Defendant bank asked for an instruction to the effect that the plaintiff could not have a verdict against more than one of these alleged converters. This instruction was refused and it claims error. We think the bank is incorrect. The general rule with regard to the liability of several persons in such an action as this is that the satisfaction of the judgment against one precludes proceeding against another. This is the rule as it appears in the Restatement, Torts, § 886; Restatement, Judgments, § 95, and this is the rule as it is generally applied in Pennsylvania. Union of Russian Societies of St. Michael & St. George, Inc., v. Koss, 1944, 348 Pa. 574, 36 A.2d 433. There is some early authority in Pennsylvania that seems to indicate in actions for conversion that the securing of a judgment against one alleged tortfeasor has the same effect. See, e. g., Hyde v. Kiehl, 1898, 183 Pa. 414, 38 A. 998. These cases are not new and the

authorities above cited announce the present-day rule. Whether the older cases represent the present law of Pennsylvania is doubtful. See Goodrich-Amram, Pennsylvania Procedural Rules Service, §§ 2229(b), 2232(f)–1 (1940), Pa.R.C.P. Nos. 2229(b), 2232(f), 12 P.S. Appendix. But even then they do not go so far as to preclude a verdict against more than one defendant. It might well be, if they were still effective, that a plaintiff would have to elect, before judgment was entered, which defendant he wanted to pursue. There is, we conclude, no merit in this point made by the defendant.

IV.   Certain Objections to Evidence.

█   The defendants claim prejudice when the trial judge refused to allow them to show the remarks of the sentencing judge at the time the bank cashier was convicted. This is not a proper subject for complaint. The extent to which a witness may be rehabilitated after his credibility is attacked by showing that he has been convicted of a felony is a matter in which the trial judge has, and must have, wide control. United States v. Boyer, 1945, 80 U.S.App.D.C. 202, 150 F.2d 595, 166 A.L.R. 209.

█   There were certain exhibits to which objection was made. These consisted of a notice sent out by the Federal Reserve Bank of San Francisco to the Pittsburgh Branch, Federal Reserve Bank of Cleveland, notices of claim of loss from the plaintiff bank addressed to the Pittsburgh Branch of the Federal Reserve Bank of Cleveland and a copy of a notice circulated by the Federal Bureau of Investigation in the area of the Pittsburgh Branch of the Federal Reserve Bank of Cleveland. It is not claimed that any of these reached the Indiana Bank so as to charge it with the knowledge which these notices contained. The judge limited their use to the establishment of the loss by the plaintiff and that notices of the loss went out through banking channels. This was not error. The analogy of the "hue and cry" immediately suggests itself. And we think that the fact of a notice being broadcast in the bank's vicinity is admissible on the question of whether the bank may have had some knowledge.

The lack of possible harm from these exhibits even if the judge was too lenient in admitting them is observed when one reads the interminable colloquy which preceded their admission. At least six lawyers were involved and questions and objections came with rapid-fire frequency. One may seriously doubt whether the documents had any significance at all as they got to the jury. Nothing was said about them in the judge's charge and no one asked the judge to say anything more than he did on the point. It seems clear to us going through the record of a vigorously contested trial that instances of this kind are swallowed up in the sum total of the testimony and have no significance until lawyers examine the record to find error.

The case was technical. The trial judge instructed the jury fully and accurately. The jury has reached a permissible conclusion.

The judgment of the district court will be affirmed.