Edward Earle BECK, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19562.

United States Court of Appeals Fifth Circuit.

May 30, 1963.

Rehearing Denied July 22, 1963.

---

William F. Walsh, Percy Foreman, Foreman & Walsh, Houston, Tex., for appellant.

Morton L. Susman, William A. Jackson, Asst. U. S. Attys., Houston, Tex., Woodrow Seals, U. S. Atty., by Morton L. Susman, Asst. U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON, WISDOM and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

Edward Earle Beck, appellant, was convicted by a jury of a violation of 21 U.S.C.A. § 176a. The substance of the offense was the smuggling of five marihuana cigarettes into the United States from Mexico at the Laredo International Bridge. The marihuana was hidden in the elaborate hairdo of his travelling companion, Janet Watkins.

Beck and Janet Watkins, together with another couple, went to Mexico for a weekend. When the parties entered the United States upon their return, an initial inspection revealed no contraband; but Janet Watkins was taken into a search room by a female inspector and subjected to a thorough search. The inspectress found five marihuana cigarettes "done up on top of her head in a roll off her neck", with a quantity of seconal and benzedrine tablets.

Beck was tried alone for the offense; Janet Watkins having previously plead guilty to "knowingly" smuggling the cigarettes into the United States. At the trial of this case, Janet Watkins, a chief witness for the prosecution, testified in answer to some questions that she did not know the marihuana was in her hair; but in answer to other questions she admitted having knowledge of its presence. When the search was made, Beck told the customs officer that Janet Watkins had no knowledge of the marihuana in her hair and that he had placed it there without her knowledge. At his trial, he claimed that Janet Watkins had placed the marihuana in her hair and that he had no knowledge of the existence of the narcotic.

In summary, Beck specifies the following four errors which he claims are sufficient to reverse his conviction: (1) That his character was attacked improperly upon the direct examination of Janet Watkins, when in response to the prosecutor's question, she testified that Beck was a pimp, panderer, or procurer, in view of the fact that the defense did not attempt to establish Beck's good character nor did he take the witness stand; (2) The trial court erred in submitting the case to the jury on the theory that Beck and Janet Watkins were acting in concert with each other; whereas, Janet Watkins herself denied that she knew anything about the presence of marihuana in her hair, and therefore she and the defendant could not have acted in concert with respect thereto; (3) Since the evidence will only support a conviction of Beck upon the theory that he *caused* Janet Watkins to violate the law, the trial judge erred in refusing to instruct the jury that he must have wilfully caused such violation as provided by Title 18 U.S.C.A. § 2(b);[1] (4) It was error for the court to refuse to allow the defense to prove that cosmeticians receive 500 hours of training in hairdressing, in view of the peculiar and unique significance of hair styling in this case.

During the Government's direct examination of Janet Watkins, an effort was made to prove that the defendant Beck had undertaken to persuade her to become a prostitute; it being contended that such a course of conduct would "* * * show the similarity of this type of action * * *", that is, similarity in using her to smuggle marihuana, and using her in the business of prostitution. The inquiry related to whether or not Beck and the witness Watkins had a discussion "* * * as to a means of raising * * * money?". At this point in the trial, the court sustained the defendant's objection. On cross-examination the defense made rather strong insinuations concerning the character, veracity and conduct of the witness Watkins, making full inquiry as to her background, her employment, where she worked, her association with others, and similar matters.[2] The

1. Title 18 U.S.C.A. § 2(b) provides: "Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such."

2. The witness Watkins had also been known as Mrs. Adriano. The following is from the record:

"Q. All right. Then you had been there at that time whatever length of time you had lived at Cherie's on LaBranch, is that correct?

"A. Yes, sir.

"Q. What was Cherie's other name?

"A. Cherie—I don't—her last name I don't know.

"Q. Did you ever know it?

"A. I think it was Cherie Parker. She was from Corpus Christi.

"Q. Did you know her in Corpus?

"A. Yes, I met her through a girlfriend of mine.

"Q. Just state if you knew her. Mrs. Adriano, while you were living at Cherie's, did you have any employment?

"A. No, sir. I was looking for a job.

"Q. Will you tell the jury how many hundreds of dollars you sent back to Corpus—

"A. None.

"Q. —in July, the month of July, 1961?

"A. None.

"Q. Not any?

"A. No, sir."

defense also undertook to impeach the witness Watkins on numerous grounds, interrogating her as to her knowledge of and use of marihuana, whether she had been to Mexico on prior occasions, her association with the defendant Beck, whether she knew of the location of a certain store in Mexico, her ability to arrange her hair as it was arranged when the the marihuana was discovered, and whether she realized that she had plead guilty to "knowingly and wilfully" having possession of marihuana.[3] The cross-examination by the defense as to the activities of the witness Watkins rather clearly related to the matter of her being a prostitute.[4] On redirect examination the Government asked the

3. The trial judge commented as follows: "I think it is admissible at this stage of the proceedings. I am aware of the fact that I excluded it when this witness testified first. My reason for doing so was, I thought the point which you are now making, at that posture, was probably well taken. Since the witness has left the stand, however, the defense has injected this question of her good character, of her working as a prostitute, of the fact that the witness Collins had a discussion or an inspection of this witness while she was staying at the address which is shown to be the same as the Taylors' house; she has been impeached in any number of particulars, and in my judgment, in rebuttal, she is entitled to show that her only connection with this type of work was through the defendant and through the Taylors, and also to show her relationship with the defendant, in explanation of her own testimony. In other words, having been impeached, she is entitled to show the whole story.
"I will instruct the jury that the defendant is not on trial for any offense except those in the indictment, and they will not consider this other than in so far as it has to do with the credibility of this witness."

4. "Q. I direct your attention to a date along about the 25th or 26th, at the end of August, 1961, to a telephone call from one Dottie Youngblood. Did you receive a call from that madame to fill a date at a given address in an area of Houston known as Sin City?
"A. No, sir.
"Q. Did you or not take a taxicab to that place, and find there two men— to any place there, and find there two men waiting for two girls?

"MR. JACKSON: Just a minute. Your Honor, we object to this line of questioning. Mr. Foreman can come out and ask the question, of course, for impeachment as to any conviction she might have for a felony, but to go all around the thing and attempt to, by innuendo and so forth, the question has no materiality and it is certainly not a proper question for impeachment purposes.
"MR. FOREMAN: I am not attempting to impeach her. I am attempting to lay a predicate for impeachment.
"THE COURT: I am prepared to rule on it without further argument.
"I think you may prove, if you can, that this young lady has used marihuana, because she has denied it; but in the event you prove she has used it, I think it would furnish some motive for the offense. I don't think you may attempt, in the guise of showing she may have smoked marihuana, to leave these inferences you are undertaking to leave, and I would sustain an objection to that part of the question.
"MR. FOREMAN: I don't think I am undertaking to leave any inferences, but I think I owe it to the Court, in laying a predicate for impeachment, to fix the time, place, and the occasion.
"THE COURT: All right, sir.
"Q. Do you know a prostitute in Houston whose real name is Dorothy Crim, but whose professional name is Vicki Collins?
"A. I know her from here.
"Q. Did you see her at an apartment off San Felipe, around the 4500 block, in an area sometimes called Sin City, on a night in late August?
"A. No, sir.
"Q. Around the 25th, 6th or 7th?
"A. The 26th of August I was on my way to Corpus Christi.
"Q. And when did you come back from Corpus Christi?
"A. The following week.
"Q. All right. Before you went to Corpus Christi, and late in August, did you see Vicki Collins at an apartment in the southwest area of Houston?
"A. No, sir.
"Q. Off San Felipe? Did you on that occasion fix not only her hair, but your own hair?
"A. No, sir.
"Q. After or just before leaving the apartment?
"A. No, sir.

witness if she had ever engaged in prostitution. The court permitted her to answer, but refused to permit the Government to ask her whether she had ever been requested by any person to engage in prostitution.[5]

As one of its witnesses, the defense called Dorothy Crim, who testified to a number of facts which directly conflicted with the testimony of Janet Watkins. Dorothy Crim claimed that she had seen Janet Watkins arrange her own hair in the style in which it was arranged when the marihuana was found and that she had seen her smoke a marihuana cigarette. The examination of Miss Crim went much farther. In substance she testified that she once worked with Janet Watkins as a prostitute. She further outlined the fact that " * * * the Madame that I worked for had sent me over to see what she looked like, and to talk to her, and see if she could use her on calls." She stated that the LaRivera Club where Janet Watkins had worked was a place where prostitutes made their dates; that she and Miss Watkins went to an apartment off San Felipe Drive in Houston known as "Sin City" to meet two "customers"; and that the Madame received forty percent of the call girl's earnings. The defense, in its brief, asserts that it is important to appreciate the fact that the defense never endeavored to impeach Miss Watkins by proving she was a prostitute. It is difficult to see how such an assertion can be made or that the testimony offered by the defense could have any other effect. The trial judge gained a different impression of the evidence, and we strongly suspect the jury gained the same impression as the trial court.

After all of the foregoing transpired, the Government was permitted to recall Janet Watkins, and after prolonged argument and discussion, the court permitted the following questions:

"Q. Have you ever been requested to go into that business [prostitution] by any person?

"A. Yes, sir.

"Q. And who was that person?

"A. Eddie Beck."

Beck strenuously contends that this evidence was inadmissible, being wholly unconnected with the crime charged and that it could have no other effect upon the jury than to prejudice them against him.

 The case of Bracey v. United States, 1944, 79 U.S.App.D.C. 23, 142 F.2d 85, is somewhat similar to the case at bar. In that case the defendant was charged with carnally knowing and abusing a twelve year old girl. The defendant's step-daughter was a witness against him. The defense attempted to impeach her testimony by proving that the little girl did not like her step-father. On recross-examination, the girl was allowed to explain that the reason she disliked the defendant was the fact that he had committed a similar crime against her. The Court said in conjunction with the admissibility of this evidence.

"When, however, the impeachment of a witness is conducted in such manner as itself to confuse the jury concerning the existence of bias, or of its character if bias does exist, and thus to mislead the jury concerning the veracity and dependability of the witness, then the trial

"Q. Did you or not, on that occasion, receive thirty dollars from Vicki Collins?

"A. No, sir."

5. "THE COURT: Ladies and gentlemen of the jury, I want to give you this instruction: A few moments ago, I permitted this witness to testify over objection that she was not a prostitute, and never worked as such, and had not

associated with prostitutes, words essentially to that effect.

"The question was then put to her whether anyone had asked her or suggested that she work in that capacity. I think the question is improper; there is no need to pursue that question any further. You ladies and gentlemen please will not consider the question as meaning anything. Disregard it, if you please.

"Now you may go forward."

judge may properly permit an explanation to be made."

The rule applies logically, not only when a witness is impeached because of bias, but also when bad character is used to impeach a witness. As stated in United States v. Boyer, 1945, 80 U.S.App.D.C. 202, 150 F.2d 595, 166 A.L.R. 209, the Court said:

"Whether the witness is or is not a defendant, if the opposing party introduces his previous convictions we think the witness should be allowed to make such reasonably brief protestations on his own behalf as he may feel able to make with a due regard to the penalties of perjury."

When the defense opened up the question of Janet Watkins' character by attempting to prove that she was a prostitute, the prosecution was properly allowed to counteract that evidence or rehabilitate the witness, even if in doing so the evidence offered made the defendant appear as an unsavory character. As held in United States v. Novick, 2 Cir., 1941, 124 F.2d 107:

"And if the evidence was proper rebuttal, the fact that incidentally it implied an illegal act on appellant's part would not bar it."

The extent to which counteracting and rehabilitative evidence may be received after the credibility of a witness has been attacked is a matter in which a trial judge has broad discretion. We hold that the trial judge did not abuse his discretion in this case. There was no unfair advantage to the prosecution and no unfair surprise to the defense. Bank of America National Trust & Sav. Ass'n v. Rocco, 3 Cir., 1957, 241 F.2d 455.

In addition, the trial court gave a thorough cautionary charge to the jury to the effect that the evidence offered was not received to cast any reflection on the character of Beck, but only incidental to the credibility of Janet Watkins. This charge was approved in Ahrens v. United States, 5 Cir., 1959, 265 F.2d 514. We do not approve an unbridled attack upon the defendant's character in a situation in which a witness has been impeached. In the circumstances of this case, since the witness has been attacked by a showing that she was a prostitute, rebuttal testimony was entirely proper to show that her only connection with that type of activity was through Beck, and to show her relationship with Beck in explanation of her testimony.

■ In his second specification of error the appellant contends that the trial court erred in submitting the case to the jury on the theory that the defendant could be convicted if the jury believed he aided, abetted, counseled, commanded, induced or procured the commission of the offense by Janet Watkins as provided by Title 18 U.S.C.A. § 2(a).[6] Grant v. United States, 9 Cir., 1961, 291 F.2d 746. It is contended that knowledge on the part of Janet Watkins of the presence of the marihuana in her hair is necessary proof to support such a theory. It is claimed that the only such evidence was developed by the appellant on cross-examination when she admitted that she entered a plea of guilty to "knowingly and wilfully" smuggling the contraband. Such evidence, it is contended, was only for impeachment and could not be otherwise used, and certainly it could not be used to prove that Beck aided or abetted Janet Watkins. The defendant relies on Grant v. United States, 9 Cir., 1961, 291 F.2d 746. We cannot agree with this contention. There was ample evidence in the record to show a close relationship between Janet Watkins and the defendant. She stated that he influenced her to move to Houston from Corpus Christi; that he arranged for her to live with his mother; he obtained a room for her at the Taylor residence; he discussed marriage with her; she shared the same motel room with him on the trip to Mexico; she plead guilty to "wilfully and knowingly" transporting marihuana arising out of the same transaction, and such plea was entered in the same court; and he proved that she was a prostitute, according to the evidence of witness Crim. In addition, there was evidence that Beck was in possession of marihuana before returning to the United States; that he smoked it; that Janet Watkins admitted having the marihuana

6. Title 18 U.S.C.A. § 2(a) is as follows: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

in her hair and the witness Crim testified that she was thoroughly capable of arranging her hair in the fashion in which it was arranged when the marihuana was found. Beck takes a rather strange position. In the trial court he sought an acquittal by carefully and cautiously proving full knowledge of the presence of the marihuana on the part of Janet Watkins, but here he contends that since she had no knowledge of its presence, Beck could not be guilty of aiding and abetting her in the commission of the offense. The evidence as to the knowledge of Janet Watkins was not proved by one or two isolated questions seeking to impeach her, but there was much evidence. We find nothing in the case of New York Life Ins. v. Bacalis, 5 Cir., 1938, 94 F.2d 200, a civil case, to support the appellant's argument. In that case hearsay evidence was admitted for the sole purpose of impeachment and was not admitted as substantive evidence. The court clearly charged the jury as to this aspect of the case:

"In the event you should find that Beck knew of Miss Watkins' intention to bring the marihuana back, but if he did not in any sense participate in her smuggling of the marihuana, if he did not aid, abet, counsel, command or induce her to do so; if it was her act, and he had knowledge but did not aid, abet, command or induce her to do it, and simply sat by and said nothing, then Beck should be acquitted, because the mere fact that he knew the law was being violated would not make him guilty."

Beck next contends that when the trial judge charged the jury on the theory that he was guilty under 18 U.S.C.A. § 2(b), that is, that he caused Janet Watkins to transport the marihuana into this country, that he did not include the word "wilfully" in his charge, which is an ingredient of the offense. This contention arises from the court's following charge:

"Whoever causes an act to be done which, if directly performed by him, would be an offense against the United States, is also a principal and punishable as such * * * if he caused that act of smuggling to be done, he would likewise be guilty with Miss Watkins. * * *"

At the beginning of the charge, the trial court read the indictment which charged Beck with "knowingly and wilfully" smuggling marihuana into the United States. He then read to them 21 U.S.C.A. § 176a, which requires a "knowing" intent on the part of an accused. Immediately thereafter the court charged further:

"The defendant is charged with performing this act knowingly. Knowingly, of course, simply means that it was done with knowledge, that it was done deliberately, as to be distinguished from an act which was done accidentally or inadvertently."

The charge throughout contained references to the necessity of a finding of intent for a conviction. The charge must be looked upon as a whole in order to determine if an issue is fairly presented to the jury. Legatos v. United States, 9 Cir., 1955, 222 F.2d 678; Windisch v. United States, 5 Cir., 1961, 295 F.2d 531. We hold that the charge as a whole fairly presents the issue of wilfulness to the jury and is not subject to the infirmities claimed.

In a further effort to prove knowledge on the part of Janet Watkins, it was the defense's contention throughout the trial that Janet Watkins had put the marihuana in her hair as she rolled it up; but she denied that she could or did do so. The testimony showed that when Janet Watkins crossed the border, she listed her occupation as "cosmetician when employed". The defense sought to prove that a cosmetician is required to have at least 500 hours training in hairdressing to become licensed. The trial judge excluded this proffered evidence as irrelevant, and Beck claims this was error. There was never any contention in the trial that Janet Watkins was a licensed cosmetician, as opposed to a nonlicensed one. There was ample evidence in the case from which the jury could have drawn the conclusion that she could roll up her own hair. There was direct testimony to that effect. At best, the receipt of the offered evidence was discretionary with the trial judge, it was

cumulative, and its exclusion was not prejudicial error.

The defense of the appellant was skillfully conducted in the trial court by experienced counsel. Our examination of the record convinces us that he received a fair and impartial trial. Cases of this nature do not always run smooth and it is often true that witnesses on both sides make conflicting statements. Such was true in the trial of this case. We are impressed with the following forthright statements from the appellant's brief:

"We are not, of course, suggesting that this Court should weigh the evidence; we are not appealing this conviction on the sufficiency of the evidence to sustain a conviction as a matter of law."

\* \* \* \* \*

"We concede, *in the light of this relationship between the parties,* that the Appellant has made many contradictory statements concerning the marihuana found in Janet Watkins' hair, some of which would authorize conviction and some of which would indicate that he is innocent." (emphasis added)

The appellant does claim serious errors in the trial, but we cannot agree.

The judgment of conviction is Affirmed.

On Motion for Leave to File Supplemental Petition and On Petition for Rehearing

PER CURIAM.

Upon consideration of the petition for rehearing and of the motion for leave to file supplemental record in support thereof, and of the answer of the United States with exhibits to the motion for leave to file and to the petition for rehearing, and it appearing that the motion for leave to file supplemental record is without substance it is ordered: that the motion for leave to file supplemental record be, and it is hereby, denied: and that the petition for rehearing also be and it is hereby denied.