James C. **HAWKINS** and Raymond Melvin Shelby, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 25013.

United States Court of Appeals
Fifth Circuit.

Oct. 22, 1969.

Rehearing Denied Nov. 18, 1969.

Joe Tunnell, Tyler, Tex., for appellants.

Wm. Wayne Justice, U. S. Atty., Tyler, Texas, Wm. Louis White, Asst. U. S. Atty., Tyler, Tex., for appellee.

Before COLEMAN and GODBOLD, Circuit Judges, and RUBIN, District Judge.

GODBOLD, Circuit Judge:

These appeals arise from the forgery and passing of postal money orders stolen from a Texas post office. Hawkins and Shelby were jointly tried and convicted. Hawkins appeals from conviction on multiple counts charging violations of 18 U.S.C. § 371 (conspiracy to commit any offense against the United States), 18 U.S.C. § 2 (aiding and abetting an offense against the United States), and 18 U.S.C. § 500 (forgery of postal money orders). Shelby appeals from conviction of conspiracy and forgery of a money order.

The evidence was sufficient to support the convictions of both appellants. Shelby's testimony contained admissions sufficient to support his conviction. As to Hawkins, there was evidence that he brought together Burks (who had stolen money orders to sell) and Shelby and Key (who were interested in purchasing them). The evidence showed that Key obtained funds to buy the money orders by delivering jewelry to Hawkins, who obtained money for the jewelry and turned it over to Key. There was evidence that when Key was in California on a trip passing money orders he needed new documents to falsely identify him and sought these from Hawkins in Texas. Upon Key's return to Texas, Hawkins attended a meeting of those engaged in the money order operation and there delivered to Key identification papers bearing the name or names of other persons. At that meeting money order forms were displayed and examined. Also there was evidence that Hawkins received a percentage of the "take" from passing forged money orders.

Government witness Diane Hazelwood, on redirect examination, gave damaging testimony describing how Hawkins had beaten, kicked and pistol-whipped her, inflicting serious injuries, after forcing her, dressed in her nightgown, to his cabin in the woods, where she was required to stay over night. The testimony carried heavy impact, for it tended to show Hawkins to be a brutal and vicious man. But that avails him nothing on this appeal. The incident was opened up by defense counsel who on cross-examination, sought to impeach Hazelwood by showing personal animosity against Hawkins evidenced by her filing a criminal complaint against him. The government, on redirect, elicited the details which gave rise to the complaint, without objection from the defense. The testimony was admissible. Beck v. United States, 317 F.2d 865 (5th Cir.), cert. denied, 375 U.S. 972, 84 S.Ct. 480, 11 L. Ed.2d 419 (1964). In *Beck* the judge gave a cautionary instruction. Here none was given, but none was asked.

Government witness Maxwell testified to a conversation in her presence between Shelby and Key during which Key made known his need for credit cards to serve as means for false identification, and Shelby responded that he had a friend, Hawkins who could supply had a friend, Hawkins, who could supply testimony, Shelby described Hawkins as a "fence." Objection was sustained to this characterization as hearsay, and the jury was instructed not to consider the testimony as to Hawkins. Motion for

mistrial was denied. There is not presented the matter of a codefendant's confession which tends to show in a direct way that a fellow defendant is guilty of the offense charged, as in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), but hearsay testimony of a codefendant's remark which describes his fellow defendant as a "bad man," which may tend to show guilt but in a much less direct manner. In any event *Bruton* rests upon the right *to confrontation and cross-examination* of witnesses. Shelby took the stand and testified at length in a vein largely exculpatory of Hawkins. He was not cross-examined about the remark he was said to have made. *Bruton* does not apply. James v. United States, 5th Cir. 1969, 416 F.2d 467. Maxwell's testimony was admissible against Shelby, though somewhat tenuously, going to prove Shelby's entry into the conspiracy.[1]

No reversible error arose from the remarks of the prosecutor in argument. There was evidence that Key had sent $800 to Hawkins. The first prosecutor to argue referred to this as tending to show Hawkins' guilt. The defense argument was not made a part of the appellate record, but from succeeding remarks we may assume that defense counsel sought to explain the $800 as a repayment of $300 that Hawkins had obtained for Key by selling (or pawning) jewelry that Key had turned over to him. In further argument concerning Hawkins' guilt, the closing prosecutor said:

> Oh, the Defense Counsel said, "Well, we don't know how much it was for those rings."—or some such business as that. How much was loaned? What testimony do you have from any source about any lending of any money? Three hundred dollars was mentioned. Three hundred dollars was delivered. *Where is there testimony* from any other source? There was a man that could have testified to it—his

codefendant here. He took the stand. He could have testified as to what the true bargain was. What did he say about it? Nothing.

We agree with the trial court that the reference could not be construed as relating to Hawkins. After objection that the remark was a comment on Hawkins' failure to testify, the court gave the following cautionary instruction:

> This is not the Court's view of what the prosecuting attorney said.
>
> You know—I've explained to you before—that no inference can be drawn about the failure of the defendant to testify, and no such inference is to be drawn from what this man said—and this is not an attempt, in the Court's opinion, to do that. He's talking about what the Defendant Shelby, who did take the stand, did not say.
>
> So, the objection will be overruled and the motion will be denied, with this instruction.

Hawkins correctly points out that Shelby was not present at the transaction concerning the jewelry but another person named Lacey was. Nevertheless, the court's failure to correct this factual error (not pointed out to the judge at the time) does not alter the plain import of the remarks, which, in the context of argument of Hawkins' guilt, were directed to the lack of explanation by Hawkins' codefendant who testified. The remark could refer, albeit erroneously, only to Shelby, and not to Hawkins, who could not be his own codefendant and had not taken the stand. Cf. Peeples v. United States, 341 F.2d 60 (5th Cir.), cert. denied, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965); Smith v. United States, 234 F.2d 385 (5th Cir. 1956).

Other arguments made by the prosecutors referred to the reasons for Shelby's giving testimony largely exculpatory of Hawkins. The gist of the remarks was that the jury could draw its

[1]. The statement was made prior to the beginning of the conspiracy charged in the indictment. Therefore it was not admissible under the exception to the hearsay rule of a statement made during the pendency of a conspiracy by one conspirator to be admitted against another.

own conclusions as to Shelby's reasons for admitting the charges against him while seeking to absolve Hawkins. The appellants urge that the remarks are within cases holding it error to charge a defendant with suborning perjury, but we do not reach that issue, because there was no objection and in this instance there was no plain error. Under the evidence the jury was entitled to conclude that Shelby was in fact what was referred to as a "fall guy" for Hawkins.

The question to Shelby, "Why was it that you elected to plead not guilty" was objected to, the jury was instructed not to consider it, and motion for mistrial was denied. It could not have been prejudicial to Shelby because he acknowledged facts which clearly showed his guilt, and, only in the most remote sense could the question attribute any wrong or misconduct on Hawkins' part. This was not reversible error.

Affirmed.