Anthony GARCIA, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19916.

United States Court of Appeals Fifth Circuit.

April 4, 1963.

Rehearing Denied May 20, 1963.

Clyde W. Woody, Houston, Tex., for appellant.

James R. Gough and William A. Jackson, Asst. U. S. Attys., Houston, Tex., Woodrow Seals, U. S. Atty., for appellee.

Before HUTCHESON, WISDOM and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

The appellant Garcia and three co-defendants were tried by a jury under an indictment charging them with a conspiracy to deal unlawfully in narcotics in violation of Title 21 U.S.C.A. § 174. One of the defendants was acquitted, but Gar-

680

cia and two others were convicted. Garcia was also charged with and convicted of selling heroin in violation of Title 26 U.S.C.A. § 4705(a). Only Garcia has appealed.

Garcia here complains that the trial court committed reversible error: (1) in refusing to grant a severance; (2) in denying his motion for a mistrial because of the introduction of extra judicial statements by some of the co-defendants without sufficient instructions limiting such statements to the declarants; and (3) insufficiency of the evidence to support the jury verdict of guilty.

■ It was within the discretion of the trial judge to grant or refuse appellant's motion for a severance. Unless there was a clear abuse of discretion, no reversible error results. We find no error here. The rule is succinctly stated in Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954):

*"It was within the sound discretion of the trial judge* as to whether the defendants should be tried together or severally * * *. To say that the jury might have been confused amounts to nothing more than an unfounded speculation that the jurors disregarded clear instructions of the court in arriving at their verdict. Our theory of trial relies upon the ability of a jury to follow instructions." (emphasis supplied)

■ We will now consider the second claim of error. The appellant does not contend that no instructions were given with respect to the claimed injurious declarations; but he contends that the instructions that were given were not sufficiently clear to protect him against the damaging implication that he was chargeable with such statements. He makes the further contention that the nature of the statements is such that he was prejudiced regardless of any instructions the court could have given.

The record shows that when each of the statements was admitted into evidence, the trial court instructed the jury, in varying degrees and terms, that the statement involved was to be considered only as against the declarant. Contrary to Garcia's contentions, at least some of the statements were made in furtherance of the conspiracy.

Government witness Lopez, a former drug addict, testified to the completion of several narcotics transactions with appellant. Lopez would call the appellant and appellant would arrange the meeting place where the transaction was to be consummated. Payment was made to the appellant each time for the narcotics received at the prior meeting and later sold. At such meetings, appellant would advise Lopez as to the amount of heroin he was to receive. Meetings were usually at night. Often four or five others were present at the meetings when Garcia made delivery to Lopez. After payment, the group would go to pick up the narcotics, which were never kept at the meeting place used by the appellant for the purpose of receiving payment. In the words of Lopez, "Anthony [Garcia] was supposed to let somebody, one of the ones that were there to show me where the place was, you know, to pick them up." The group traveled from the meeting place to the pick-up place in two cars; Garcia taking the lead alone in his own car, while the others followed in the second car. As Lopez stated, he would "* * * follow with four or five others with me and there would be one of them who was designated to pick up the narcotics, wherever it was, and then, he'll get off his car and pick up the narcotics and come up to my car and then we divided it." The narcotics were concealed in one bundle containing gram quantities when picked up. Garcia was never present when the narcotics were picked up and divided, but instead he drove away in his car. The narcotics were divided in Lopez' car.

Federal Narcotics Agent Jesse J. Bautista testified that one of the co-defendants, Cisneros, told him that he had been dealing with Garcia in the same manner as described by Lopez. Agent Bautista also testified that on March 7, 1960, he monitored a telephone call placed from the Office of the Federal Bureau of Nar-

cotics in Houston by the witness Lopez to the appellant, stating that Lopez dialed the appellant's home telephone number which was known by Agent Bautista; that Agent Bautista who speaks Spanish fluently and was familiar with the appellant's voice, listened on one of the office extension telephones with the consent of Lopez. He heard Garcia answer the telephone, and heard Lopez ask Garcia if he could purchase additional heroin. Garcia answered that he had just been arrested by Houston Police and wanted to suspend his operations temporarily because he thought that one of his "muchachos" was working with the police. Garcia suggested that Lopez keep in touch with him, "When I'm back in business * * * which will be a few days * * * I'll let you know. We can get back in business." Other Narcotics Agents testified to similar conversations with various associates and co-conspirators of Garcia.

The Government's chief witness in proving the substantive counts was Louis Costello Garcia, who started using heroin in February 1960. By December 1960 he required 4 to 6 capsules per day. In December 1960 and January 1961, the witness Garcia lived in Houston and was buying heroin every 2 or 3 days from the appellant. From time to time he called appellant, who arranged meetings at various places. According to witness Garcia, he would pay the appellant for the heroin and then, "I would go to some location where [the appellant] would tell me to go get it." The evidence clearly shows that any statements made by the co-defendants which tended to implicate Garcia, were merely cumulative.

The record [and appellant's brief] clearly show that after each of the alleged objectionable statements, the court instructed the jury to consider such statement as against the declarant only. In addition to these separate instructions, the court fully explained the principle involved by the following general instruction:

"The law is that 'Declarations of one conspirator may be used against the other conspirator not present on the theory that the declarant, that is, the person making the statement, is the agent of the other, and the admissions of one are admissible against both, under a standard exception to the Hearsay Rule applicable to the statement of the party but such declaration could only be used in the furtherance of the conspiracy; there can be no furtherance of a conspiracy that has ended; therefore, the declaration of a conspirator —' * * * could not bind any other co-conspirator if there are any such if made after the conspiracy has ended."

"I want to make it clear that that evidence is limited against the declarant only, and the person making the statement; therefore, it is not admitted against any other conspirator or any other defendant claimed to be a conspirator. If [made] after the conspiracy has ended, the declarations are admissible, as I have said, only as against the declarant making the statement."

The applicable law is fully discussed in Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), where the United States Supreme Court concisely states the rule to be:

"The issue here is whether, under all the circumstances, the court's instructions to the jury provided petitioner with sufficient protection so that the admission of Whitley's confession, strictly limited to use against Whitley, constituted reversible error. *The determination of this issue turns on whether the instructions were sufficiently clear and whether it was reasonably possible for the jury to follow them.*" (emphasis supplied)

When the Paoli case was decided by the Court of Appeals, 229 F.2d 319 (2 Cir., 1956), Judge Learned Hand stated:

"Unhappily, it is extremely difficult to escape the dilemma that must always arise on such occasions, because

on the one hand the declaration should remain unimpaired as against the declarant, and yet it must be in some measure mutilated in favor of the others. At best the solution is especially a matter for the *exercise of discretion by the trial judge.*" (emphasis supplied)

In our opinion, the trial court wisely, clearly and carefully instructed the jury as to the applicable law; and the rights of the appellant were fully protected. We find no abuse of discretion and no prejudicial error.

■■ Appellant's contention that the evidence was insufficient to support the verdict and conviction is completely without merit. United States v. Tramaglino (2 Cir., 1952) 197 F.2d 928; Ware v. United States (8 Cir., 1958) 259 F.2d 442; Corbin v. United States (10 Cir., 1958) 253 F.2d 646.

Somewhat typical of the alleged errors and the interpretation of the record by the appellant is demonstrated by the argument in appellant's brief to the effect that the court did not sufficiently instruct the jury concerning alleged statements made by the defendant Chavez. In his brief, the appellant states, with respect to the Chavez statements, the following:

"The trial court's instruction regarding this testimony was, (T. 300, L. 22–23)

" 'Or any other defendants except Chavez?'

"The court then closed testimony for the day."

The record is much more complete, much clearer and shows far greater care for the rights of the appellant Garcia than the above quotation from his brief would lead the court to believe; but we have examined the record and conclude that the appellant is undertaking to show injury where there was none. We quote from the record:

"MR. WALSH: Your Honor, excuse me, I think that perhaps this is a matter that would be proper for some voir dire examination prior to its admission before the jury. I'm not certain what Counsel is trying to develop, but I think this is something which may not be admissible against all defendants.

"MR. JACKSON: Your Honor, we would advise Counsel that it is not, and subject to the same instruction which was given with the others—

"MR. WALSH: Well, do I understand that it's being offered only against the defendant Chaves?

"MR. JACKSON: Yes.

"MR. WALSH: And not to be considered against the defendant Anthony Garcia, is that the term of the offer?

"MR. JACKSON: That's correct.

"THE COURT: Or any other defendants except Chaves?

"MR. JACKSON: No, no, Your Honor.

"THE COURT: All right.

"MR. WOODY: Thank you.

"THE COURT: Against Chaves only, members of the jury, not against any other defendant. Go ahead. Answer the question."

    \*    \*    \*    \*    \*    \*

"MR. WALSH: Excuse me, Your Honor. Simply I don't mean to belabor this, but simply so there is no doubt in the record, I assume that the officer's last remark is also admitted only as against the defendant Chaves.

"THE COURT: That's right.

"MR. WALSH: Thank you.

"THE COURT: Don't consider it against the other defendants except the defendant Chaves, members of the jury."

Our examination of the record, and all of the errors about which the appellant complains convinces us that he received a fair trial. Evidently the jury understood the trial court's instructions, because one of the defendants tried with Garcia was acquitted.

The judgment of the lower court is Affirmed.