Randolph K. HIRAM, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18682.

United States Court of Appeals
Ninth Circuit.

Dec. 10, 1965.

Charles Y. Boeggeman, Sacramento, Cal., for appellant.

Cecil F. Poole, U. S. Atty., James J. Brosnahan, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLIN, DUNIWAY and ELY, Circuit Judges.

HAMLIN, Circuit Judge.

Appellant Randolph K. Hiram was indicted on the charge of accessory after the fact to bank robbery in violation of 18 U.S.C. § 3.[1] He entered a plea of not guilty, and after a trial by jury was convicted as charged. Appellant filed a timely appeal correctly invoking this court's jurisdiction under 28 U.S.C. § 1291. His motion to appeal in forma pauperis was granted.

At appellant's trial, the government's evidence established that at 11:00 a. m. on December 6, 1962, the San Francisco Marina Office of the Wells Fargo Bank, a member of the Federal Reserve System, was robbed of $5,251.00. Three employees of the bank who were witness to the robbery testified that they identified the alleged robber from photographs as appellant's nephew, Edmund Hiram, and that appellant was not present during the robbery.

Mrs. Walter Gomez testified that appellant and Edmund appeared at her home briefly at 2:30 or 3:00 p. m. on December 6, 1962, and returned later that day with Victoria Kaelehi, appellant's niece, to stay the night. On the morning of the 7th, Mrs. Gomez entered the room in which both Hirams spent the night and handed Edmund a copy of the morning newspaper stating that "There's something about you in the paper." The article described the robbery and named Edmund Hiram as the robber of the Wells Fargo Bank. At the time, appellant was awake and in the room three or four feet from Edmund. Later in the morning of the 7th, the two Hirams and Victoria Kaelehi left the Gomez residence in appellant's car en route to Portland, Oregon.

Victoria Kaelehi testified that during the trip she noticed appellant change money from bills of small denomination to bills of large denomination. When the party arrived in Portland, they registered in a motel where both Hirams used fictitious names. Some time during the stay in Portland, Victoria had a conversation with the Hirams in which "Randy [the appellant] asked Edmund to tell me what was going on. So Ed seriously brought me over and said that he was in trouble and said some big boys were after him. * * * He said he had done a job and some big boys were after him."

During the stay in Portland, appellant had a telephone conversation with Mr. Walter Gomez, Edmund's half brother, during which Gomez told appellant that the FBI was looking for Edmund.

The party went from Portland to Seattle, Washington, where they left Edmund. Appellant and Victoria returned to Portland and then went to New Mexico, where appellant was arrested on December 15, 1962. FBI Agent Wirt Jones testified that after appellant's arrest, Jones questioned him. After being advised of his rights appellant related the events of December 6, 1962, as follows: On that afternoon between 1 p. m. and 4 p. m. Edmund returned appellant's car, which he had borrowed earlier, and gave appellant a small brown paper sack containing about $380.00 and said "Merry Christmas." Edmund then asked appellant to take some clothing to Edmund's sister in Hermosa Beach or

---

1. "§ 3. Accessory after the fact

Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.

Except as otherwise expressly provided by any Act of Congress, an accessory after the fact shall be imprisoned not more than one-half the maximum term of imprisonment or fined not more than one-half the maximum fine prescribed for the punishment of the principal, or both; or if the principal is punishable by death, the accessory shall be imprisoned not more than ten years."

Redondo Beach. Edmund then left and appellant had not seen Edmund since.

Appellant testified in his own defense, and admitted most of the evidence presented by the government was true. His testimony may be summarized as follows: He recalled that Mrs. Gomez gave Edmund a newspaper on the morning of December 7; however, she said nothing at that time, and appellant never read the paper or heard what it contained. His trip to Portland was to show his niece Victoria the country and to help Edmund prepare for his upcoming wedding which was to take place there. Both Hirams often used fictitious names because of their gambling activity and at no time did Edmund tell appellant nor did he hear Edmund tell Victoria about doing a "job." He knew nothing about Edmund's participation in a bank robbery. Appellant admitted the story he told to FBI Agent Jones was false. The money found in the trunk of his car was given him by Edmund prior to the robbery. Appellant lied to Jones because "when he [Jones] started accusing me of being at the bank at the time of the robbery, I just had to get him off my back one way or the other."

At the time of the trial Edmund's whereabouts was unknown.

Appellant presents the following grounds for reversal: (1) The government failed to carry the burden of proving appellant's specific intent to commit the crime charged as required by 18 U.S.C. § 3. (2) The newspaper article should not have been admitted into evidence because it was hearsay and prejudicial. (3) Appellant did not fully and consciously waive his right to counsel as guaranteed by the Sixth Amendment to the Constitution. (4) Appellant has been deprived of his liberty without due process of law as guaranteed by the Fifth Amendment.

Under 18 U.S.C. § 3 the government is required to prove three essential elements to establish the offense charged in the indictment: First, that Edmund committed the bank robbery; second, that appellant had actual knowledge of Edmund's participation in that robbery; and third, that with such knowledge, appellant in some way assisted Edmund in order to hinder or prevent his apprehension, trial or punishment.[2] The appellant does not contest the government's proof as to the first and third elements but argues that the government's evidence is insufficient to satisfy its burden of proving appellant's knowledge of the bank robbery as required by the second element.

■ As this court recently restated the correct test in determining the sufficiency of the evidence is whether "reasonable minds could find that the evidence excludes every hypothesis but that of guilt." Kaplan v. United States, 329 F.2d 561, 563 (9th Cir. 1964). Although the government presented no direct evidence as to appellant's knowledge, there was an impressive array of circumstantial evidence including a detailed account of appellant's activities before and after the robbery which could support a jury's finding based on logical inference that appellant did know Edmund robbed the bank at the time assistance was given. "[C]ircumstantial evidence is not considered inferior to direct evidence in any respect. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150." Kaplan v. United States, supra at 562. Although the appellant presented an explanation in his testimony which would have exonerated him, the jury was not compelled to believe his story. A hall-

2. It should be noted that the appellant does not contend nor does 18 U.S.C. § 3 require the principal, Edmund Hiram, to have been convicted prior to the trial and conviction of the assessory after the fact. The statute merely states that an "offense" must have been committed against the United States, and the "offender" assisted in avoiding apprehension, trial or punishment. See United States v. Chapman, 3 F.Supp. 900 (S.D.Ala.1931). Cf. Gray v. United States, 104 U.S.App.D.C. 153, 260 F.2d 483 (1958); Colosacco v. United States, 196 F.2d 165 (10th Cir. 1952).

mark of the jury system is the wide latitude with which it permits the trier of fact to decide which witnesses to believe or disbelieve. Viewing the evidence in the light most favorable to the government, as we must on an appeal from a judgment of conviction, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), "reasonable minds could find that the evidence excludes every hypothesis but that of guilt."

The appellant contends that the government did not prove that he acted willfully and with specific intent to commit the crime charged. Under 18 U.S.C. § 3 it is enough that the government prove the appellant had knowledge of the bank robbery and acted with that knowledge when he assisted the alleged robber. That the government satisfied its burden of proof on this element has been discussed previously.

The newspaper article was not hearsay since it was not offered for the truth of the matter stated therein but only to show notice to the appellant, as the district court's limiting instruction to the jury correctly stated.

Appellant contends for the first time on this appeal that admission of his statements to FBI Agent Jones was in violation of his right to counsel. Agent Jones' uncontradicted testimony shows that appellant was fully advised of his rights to counsel and to remain silent.[3] There is no evidence in the record or contention on appeal that appellant acquiesced to the questioning without intelligently understanding his rights. Under these circumstances, we hold that appellant waived his right to counsel. Neither appellant's jovial mood at the time of questioning nor his allegation that he answered to get Agent Jones "off my back," absent any evidence that coercion was involved,[4] indicates a contrary conclusion.

We reject appellant's argument that he was deprived of due process of law because it is based on the cumulative effect of the alleged errors which we have rejected above.

The judgment is affirmed.

---

3. Jones testified:

"A. Well, I just warned him that he didn't have to make any statement, and anything he said could be used against him in a court, and he had the right to the advice of a lawyer."

Appellant's answer "Yes" to the following question on his direct examination corroborates Agent Jones' testimony:

"Q. Did Mr. Jones state to you at that time that it was not necessary that you answer his question?"

4. Agent Jones testified that the arrest was made at 11:15 p.m. and appellant was questioned for a period of about 30 to 40 minutes after twelve that night, during which time the false statements were made after, according to appellant's testimony, Agent Jones accused him of participating in the robbery. Nothing in these facts indicates coercion.