John P. TILLMAN, Robert Barber Moore, Johnny C. Wilson, Larry Fox, Donald P. Stone and Michael W. Simmons, Appellants,

v.

UNITED STATES of America, Appellee.

No. 25381.

United States Court of Appeals Fifth Circuit.

Jan. 9, 1969.

Rehearing and Rehearing En Banc Denied March 10, 1969.

See also D.C., 272 F.Supp. 908.

Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., Dennis J. Roberts, Newark, N. J., for appellants.

Charles B. Lewis, Jr., Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before WISDOM and AINSWORTH, Circuit Judges, and JOHNSON, Judge.

AINSWORTH, Circuit Judge:

Appellants Tillman, Stone, Wilson, and Fox appeal from a jury verdict finding them guilty of attempting to interfere with the administration of the Universal Military Training and Service Act, in violation of 50 U.S.C. App. § 462.[1] In addition, these four appellants, as well as

1. 50 U.S.C.App. § 462(a) reads, in relevant part, that

"* * * any person or persons who shall knowingly hinder or interfere or attempt to do so in any way, by force or violence or otherwise, with the administration of this title * * * or the rules or regulations made pursuant thereto, or who conspires to commit any one or more of such offenses,

appellants Moore and Simmons, were found guilty of wilfully injuring property of the United States, in violation of 18 U.S.C. § 1361,[2] and likewise these convictions are appealed.[3] After a painstaking consideration of the numerous objections of the appellants, we affirm the convictions.

On August 18, 1966, appellants and other picketers arrived at the Armed, Forces Entry and Examining Station in Atlanta, Georgia, and commenced picketing the station as a protest against the war in Vietnam. On numerous occasions, they attempted to gain admission to the station, allegedly to protest a water-throwing incident of the previous day, but Army personnel, assigned to guard the entrance, prevented them from entering. In the midst of this somewhat confused confrontation, there were numerous inductees who had been ordered to report to the station for induction that day,[4] and the testimony of Government witnesses shows that appellants Tillman, Stone, Wilson, and Fox restrained at least one inductee, one Verbon Grimes, from entering the induction center. The testimony of Sergeant Facemire, largely corroborated by the testimony of others assigned to guard the center, showed that while appellant Wilson grabbed Grimes' AWOL bag and appellant Tillman had Grimes by an arm, appellant Stone held his trousers, and appellant Fox had his arms around Stone's waist in order to help pull Grimes back from the entrance. Grimes himself identified all of the appellants who were alleged to have been involved except Stone, but he stated that he could not see the individual who was holding him by his waist. Tillman, the only appellant to testify during the trial, admitted grabbing Grimes, but he said that he did so in a moment of passion to redress a personal affront and not to restrain him from entering the induction center. In addition, Tillman testified that none of the other appellants was involved in the incident.

In regard to the destruction of Government property, the prosecution alleged that all of the appellants wilfully injured a glass door with an aluminum frame, at the north side entrance to the induction station. While all of the Government witnesses were not able to identify all of the appellants as having pushed on the door when it was damaged, all of the appellants were identified as having taken part in the action by at least one witness. Thus, Sergeant Facemire identified all seven appellants as having taken part, and the testimony of Lieutenant England was similar. Sergeant Fuller specifically identified Simmons, Wilson, and Fox.

## I.

The appellants allege that the trial court erred in failing to grant their motions for severance, both as to the joinder of offenses and as to the joinder of defendants. In regard to any allegation of misjoinder of offenses,[5] the rele-

shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment * * *."

2. "Whoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, shall be punished as follows:
"* * * if the damage to such property does not exceed the sum of $100,

by a fine of not more than $1,000 or by imprisonment for not more than one year, or both."

3. Defendant Schutz was indicted on this count, but the jury found him not guilty.

4. Appellant Simmons was one of those ordered to report.

5. Misjoinder under Rule 8 of the Federal Rules of Criminal Procedure is a matter of law, completely reviewable on appeal. Conversely, as we will discuss, infra, prejudicial joinder under Rule 14 is a matter within the discretion of the trial judge, which only will be examined for abuse. See 8 Moore, Federal Practice ¶ 14.02 [1], p. 14–3 (2d ed. 1968) ; In-

vant rule is Rule 8(a) of the Federal Rules of Criminal Procedure:

"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

This rule should not be interpreted in a technical or legalistic sense. 8 Moore, Federal Practice ¶ 8.05[1], p. 8–19 (2d ed. 1968), citing Cataneo v. United States, 4 Cir., 1948, 167 F.2d 820, 822–823. Where, as here, the offenses arose out of a series of connected acts, trial convenience dictates "that the government should not be made to prove the same facts more than once." [6] 8 Moore, Federal Practice ¶ 8.05 [2], p. 8–19 (2d ed. 1968). See Johnson v. United States, 8 Cir., 1966, 356 F.2d 680, 682. Thus, there was no misjoinder of offenses in the present case.

■■ Similarly, there was no misjoinder of defendants. Rule 8(b) of the Federal Rules of Criminal Procedure states:

"Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

In conjunction with a Rule 8(a) joinder of offenses, Rule 8(b) has the effect of permitting joinder of defendants where their alleged violations of law have arisen out of the same act or series of

acts. 8 Moore, Federal Practice ¶ 8.06 [1], p. 8–23 (2d ed. 1968), citing United States v. Granello, 2 Cir., 1966, 365 F.2d 990, 993; Cupo v. United States, 1966, 123 U.S.App.D.C. 324, 359 F.2d 990; King v. United States, 1 Cir., 1966, 355 F.2d 700, 704–705; Ingram v. United States, 4 Cir., 1959, 272 F.2d 567. Again, since it is apparent that the offenses allegedly committed on August 18, 1966, arose out of a connected series of acts at the induction station, there was no error under Rule 8(b) in trying the appellants together.

■ Having found that there was no misjoinder of offenses or defendants under Rule 8, it is still necessary to determine whether there was sufficient prejudice to require a severance under Rule 14 of the Federal Rules of Criminal Procedure. Smith v. United States, 5 Cir., 1966, 357 F.2d 486, 489; Bayless v. United States, 9 Cir., 1967, 381 F.2d 67, 72; Brown v. United States, 1967, 126 U.S.App.D.C. 134, 375 F.2d 310, 315. See 8 Moore, Federal Practice ¶ 14.02 [1] (2d ed. 1968). Rule 14 states, in relevant part, that

"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

The existence of prejudice, in large measure, depends upon the facts and circumstances of each case, Flores v. United States, 5 Cir., 1967, 379 F.2d 905, 909; Blachly v. United States, 5 Cir., 1967, 380 F.2d 665, 675; Peterson v. United States, 5 Cir., 1965, 344 F.2d 419, 422, and it is axiomatic that the granting of a severance is within the discretion of the trial judge. Smith v. United States, 5 Cir., 1967, 385 F.2d 34, 37.[7]

---

gram v. United States, 4 Cir., 1959, 272 F.2d 567, 569.

**6.** See generally 8 Moore, Federal Practice ¶ 8.05 [2] (2d ed. 1968). See also Drew v. United States, 1964, 118 U.S.App.D.C.

11, 331 F.2d 85; Smith v. United States, 5 Cir., 1966, 357 F.2d 486, 489.

**7.** See also Johnson v. United States, 8 Cir., 1966, 356 F.2d 680, 682; Opper v. United States, 348 U.S. 84, 75 S.Ct.

The burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed on review. 8 Moore, Federal Practice ¶ 14.02 [1], p. 14–3 (2d ed. 1968). The defendant must show something more than the fact that "a separate trial might offer him a better chance of acquittal." Id. at ¶ 14.04 [1], pp. 14–10—14–11, citing Spencer v. Texas, 385 U. S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); Robinson v. United States, 1954, 93 U.S.App.D.C. 347, 210 F.2d 29. See also Johnson v. United States, 8 Cir., 1966, 356 F.2d 680; Butler v. United States, 8 Cir., 1963, 317 F.2d 249; Smith v. United States, 1950, 86 U.S.App.D.C. 195, 180 F.2d 775.

▮▮▮▮ Appellants allege that they were prejudiced and their trial rendered unfair because the jury was unable to collate the evidence and connect the names and faces of each defendant with the independent evidence being offered against him. In essence, it is alleged that the convictions rested upon an unlawful cumulation of evidence, and that had there been separate trials, the appellants would not have been convicted. See, e. g., Drew v. United States, 1964, 118 U.S.App.D.C. 11, 331 F.2d 85, 88; Johnson v. United States, 8 Cir., 1966, 356 F.2d 680, 682; Blachly v. United States, 5 Cir., 1967, 380 F.2d 665, 675, n. 20; Peterson v. United States, 5 Cir., 1965, 344 F.2d 419, 422; United States v. Kahn, 7 Cir., 1967, 381 F.2d 824, 839. See generally 8 Moore, Federal Practice

¶ 8.05 [2] (2d ed. 1968). The test for prejudice in this context is

"' * * * whether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.' "

Peterson v. United States, 344 F.2d at 422. See also Blachly v. United States, 380 F.2d at 675, n. 20; United States v. Kahn, 381 F.2d at 839. See 8 Moore, Federal Practice ¶ 14.04 [1] (2d ed. 1968). Weighing this possibility of prejudice "against the interests of economy and expedition in judicial administration," we do not find an abuse of discretion in the denial of a severance. Smith v. United States, 5 Cir., 1966, 357 F.2d 486, 489. See Drew v. United States, 1964, 118 U.S.App.D.C. 11, 331 F.2d 85; Williams v. United States, 9 Cir., 1959, 265 F.2d 214; Johnson v. United States, 8 Cir., 1966, 356 F.2d 680, 682; Flores v. United States, 5 Cir., 1967, 379 F.2d 905, 909; Bayless v. United States, 9 Cir., 1967, 381 F.2d 67, 72. While some witnesses had difficulty in distinguishing one defendant from another, we do not infer from the jury foreman's re-

158, 99 L.Ed. 101 (1954); Peterson v. United States, 5 Cir., 1965, 344 F.2d 419; United States v. Armel, 6 Cir., 1967, 384 F.2d 51 (per curiam); United States v. Vida, 6 Cir., 1966, 370 F.2d 759; United States v. McKinney, 6 Cir., 1967, 379 F.2d 259; Flores v. United States, 5 Cir., 1967, 379 F.2d 905; Terlikowski v. United States, 8 Cir., 1967, 379 F.2d 501, 506; United States v. Sopher, 7 Cir., 1966, 362 F.2d 523; Walton v. United States, 10 Cir., 1964, 334 F.2d 343; Blachly v. United States,

5 Cir., 1967, 380 F.2d 665, 674–675 (Brown, J.); Sullins v. United States, 10 Cir., 1968, 389 F.2d 985, 989; Loux v. United States, 9 Cir., 1968, 389 F.2d 911, 920; United States v. Kahn, 7 Cir., 1967, 381 F.2d 824, 838; Bayless v. United States, 9 Cir., 1967, 381 F.2d 67, 72; Brown v. United States, 1967, 126 U.S.App.D.C. 134, 375 F.2d 310, 315; Cataneo v. United States, 4 Cir., 1948, 167 F.2d 820; Garcia v. United States, 5 Cir., 1963, 315 F.2d 679.

quest for photographs and identification of the appellants by name that the jury was confused. It is not within our province to reweigh the evidence and look behind the jury's verdict. See, e. g., Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Furthermore, as Professor Moore has stated:

> "In determining on appeal whether the jury was in fact confused, the court will look to the verdict. Convictions will invariably be sustained if it may be inferred from the verdict that the jury 'meticulously sifted the evidence,' as where it acquits on certain counts."

8 Moore, Federal Practice ¶ 14.04 [1], p. 14–15 (2d ed. 1968).[8] In this case, defendant Schutz was acquitted of the charge of wilfully injuring the property of the United States. We infer, from the totality of circumstances, including the Schutz acquittal, that whatever its initial problems and difficulties, the jury ultimately performed its function of collating the evidence, and thus it rendered a fair and impartial verdict.

 As a second ground for prejudice resulting from the failure to grant a severance, the appellants claim that they were prejudiced by their inability to call their codefendants to testify in their behalf. The evidence shows that of the several defendants only Tillman testified. This contention is without merit. As the Fifth Circuit said in Smith v. United States, 5 Cir., 1967, 385 F.2d 34, 38:

> "Lott argues that the joint trial denied him the opportunity to call Smith as a witness for the purpose of explaining his possession [of heroin]. An intention of the movant to have his codefendant testify has never been considered ground for severance. [Citing, inter alia, Kolod v. United States, 10 Cir., 1967, 371 F.2d 983;

Gorin v. United States, 1 Cir., 1963, 313 F.2d 641; Olmstead v. United States, 9 Cir., 1967, 19 F.2d 842, 53 A.L.R. 1472.] This is especially true where, as here, any prejudice resulting from the joint trial is merely speculative. Lott has neither shown nor asserted that (1) Smith's version of the facts would have any exculpatory effect [Citing United States v. Echeles, 7 Cir., 1965, 352 F.2d 892. See also Garnett v. United States, 5 Cir., 1968, 404 F.2d 26 (per curiam).] or that (2) Smith would more likely testify were he tried separately. [Citing, inter alia, Kolod v. United States, supra.] *We do not conjecture abuses of discretion.*" (Emphasis added.)

See also Sullins v. United States, 10 Cir., 1968, 389 F.2d 985, 989. See generally 8 Moore, Federal Practice ¶ 14.04 [4], p. 14–30 (2d ed. 1968). Thus, appellants' bare assertion that the joint trial deprived them of the testimony of their codefendants, without a showing as to the likelihood of the testimony being given in separate trials, and without any evidence that that testimony would tend to exculpate the appellants, is not sufficient to show prejudice. Brown v. United States, 1967, 126 U.S.App.D.C. 134, 375 F.2d 310, 316.

## II.

"Summoning as we must our most perceptive antennae to detect prejudicial communications with a juror, we nevertheless affirm the trial court's findings that the jury was not compromised." Morgan v. United States, 5 Cir., 1968, 399 F.2d 93. The appellants contend that one of the jurors expressed an opinion to a third person about the outcome of this case prior to the conclusion of the trial, and that hence the trial court erred in not granting appellants' motion for a mistrial. The record shows that a secretary to a Fifth Circuit Court of Appeals judge had reported to the judge

---

8. See Blachly v. United States, 5 Cir., 1967, 380 F.2d 665, 675; Barnes v. United States, 1967, 127 U.S.App.D.C. 95, 381 F.2d 263; Butler v. United States, 8 Cir., 1963, 317 F.2d 249, 264; Maurer v. United States, 1955, 95 U.S.App.D.C. 389, 222 F.2d 414.

for whom she worked that one George Gordon Lobb, a garageman, had told her that a lady juror had expressed the opinion that if she got the chance; she would "hang" the defendants. This conversation occurred between 2 p. m. and 2:30 p. m. on the afternoon of September 11, 1967, "when the lady came to drive her car out." The morning of September 11 had been taken up with the selection of a jury, and the court was recessed between 1:01 p. m. and 2:08 p. m. In a written statement made to Robert R. Nichols of the Federal Bureau of Investigation, Mr. Lobb stated that "I am positive that this lady said that she was on a jury panel. She did not tell me whether or not she had been selected for jury duty."

When the matter came to the attention of the court, the court addressed the jury and asked them whether they had made any comments or discussed the case with anyone. No juror responded affirmatively to this inquiry. The court then adjourned for lunch, and during the adjournment the matter was discussed by counsel with the court. After the court reconvened, it addressed a much more specific question to the jurors:

"* * * I would like to ask each one of you again, particularly the ladies on the jury, if either one of you made any remark to a garage man at the Forsyth Building garage yesterday afternoon about this case?

"Are there any of you for any reason whatsoever who feel that you can't give these defendants an absolutely fair trial based on the evidence adduced at this trial, and nothing else?"

Again, no juror responded that he had engaged in such activity. Subsequently, the trial proceeded with the caveat by the court that

"* * * if it develops that there is any truth in [the allegation of unlawful communication with a juror], my disposition would be to promptly grant you a new trial. But I'm going to let it go to the jury for the time being. since frankly we don't have time to investigate it prior to this time, and I'll take whatever action is indicated should there be a verdict of guilty and should it develop from investigation by [defendants' counsel] or by the United States Attorney or anyone else regarding it."

Two days later, Special Agent Nichols obtained the statement from Mr. Lobb referred to above.

■ As Mr. Chief Justice Fuller stated more than 75 years ago, "Private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." Mattox v. United States, 146 U.S. 140, 150, 13 S. Ct. 50, 53, 36 L.Ed. 917 (1892). See also Remmer v. United States, 350 U.S. 377, 379, 76 S.Ct. 425, 426–427, 100 L. Ed. 435 (1956), and 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); Morgan v. United States, 5 Cir., 1968, 399 F.2d 93, 97; Little v. United States, 8 Cir., 1964, 331 F.2d 287, 295; Mee v. United States, 8 Cir., 1963, 316 F.2d 467; Wheaton v. United States, 8 Cir., 1943, 133 F.2d 522, 527; Sunderland v. United States, 8 Cir., 1927, 19 F.2d 202, 212; Stone v. United States, 6 Cir., 1940, 113 F.2d 70, 77; United States v. Compagna, 2 Cir., 1944, 146 F.2d 524, 528 (Learned Hand, J.); United States v. Rakes, E.D.Va., 1947, 74 F.Supp. 645, 648. In this regard, if only one juror is improperly influenced, the trial is as unfair as if every juror was so influenced. Stone v. United States, supra at 77. However, the granting of a mistrial in such cases is largely within the discretion of the trial judge, and his decision is subject to reversal only where that discretion has been abused. Wiltsey v. United States, 4 Cir., 1955, 222 F.2d 600, 601 (per curiam). See also Wheaton v. United States, supra at 527; United States v. Flynn, 2 Cir., 1954, 216 F.2d 354, 372 (Mr. Justice Harlan); Ryan v. United States, 1951, 89 U.S.App.D.C. 328, 191 F.2d 779, 781; Richardson v.

United States, 5 Cir., 1966, 360 F.2d 366, 369, citing Johnson v. United States, 5 Cir., 1953, 207 F.2d 314, 322; Little v. United States, supra at 295; Holmes v. United States, 4 Cir., 1960, 284 F.2d 716, 97 A.L.R.2d 782; United States v. Dardi, 2 Cir., 1964, 330 F.2d 316, 332. While appellants do not attack the discretion given the trial court as to the granting of a motion for a mistrial, they assert that the court erred in acting solely on the basis of its questioning of the jury. Rather they insist that the district court should have held a full evidentiary hearing at which witnesses and jurors could have been examined and cross-examined. See Remmer v. United States, 350 U.S. 377, 380, 76 S.Ct. 425, 427, 100 L.Ed. 435 (1956); Morgan v. United States, 5 Cir., 1968, 399 F.2d 93, 97; Richardson v. United States, 5 Cir., 1966, 360 F.2d 366, 369; Wheaton v. United States, 8 Cir., 1943, 133 F.2d 522, 527; Ryan v. United States, 1951, 89 U.S.App.D.C. 328, 191 F.2d 779, 781. However, the appellants fail to recognize that the discretion of the trial court to grant a mistrial in cases of juror misconduct includes the discretion to determine the extent and type of investigation requisite to a ruling on the motion. United States v. Flynn, 2 Cir., 1954, 216 F.2d 354, 372 (Mr. Justice Harlan), citing Lewis v. United States, 1 Cir., 1924, 295 F. 441. Under the circumstances herein, we are unable to conclude that the trial court abused its discretion by failing to conduct a more thorough investigation of the juror misconduct charges. See United States v. Flynn, supra; United States v. Miller, 2 Cir., 1967, 381 F.2d 529, 539.

█ In the cases previously cited by the appellants for the proposition that a full hearing should have been held, there was some reasonable degree of assurance that in fact a trial juror was involved in a communication with a third party, and the function of the investigation was primarily to ascertain whether the Government could meet its burden of demonstrating that the communication was not prejudicial. See, e. g.,

Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); Wheaton v. United States, 8 Cir., 1943, 133 F.2d 522, 527. In the present case, however, there was little more than conjecture to implicate a juror. Cf. Mee v. United States, 8 Cir., 1963, 316 F.2d 467. The record shows that a juror would have had only eight minutes, between 2 and 2:08, in which to pick up her car, make some disposition of it, and return to the courtroom for the opening statement. Furthermore, Mr. Lobb stated that the woman to whom he spoke said she was on the jury panel, but she did not indicate that she had been selected for jury duty. Thus, considering the fact that the jury had been selected that morning, a far more reasonable inference is that the woman involved in the conversation was a member of the jury panel who had not been selected for duty in this case, and who thus picked up her automobile in order to go about whatever other business she had. This conclusion is buttressed by the fact that after the court had twice questioned the jury as to outside influences, no juror admitted having had such a conversation. In this factual context there was no abuse of discretion in failing to conduct a more thorough investigation, for if a full hearing were required in every instance where an uncorroborated rumor or a conjecture came to the attention of the trial court, there would be no end to the interference with an orderly trial. As Judge Learned Hand stated in United States v. Compagna, 2 Cir., 1944, 146 F.2d 524, 528:

"* * * it is most undesirable that anything should reach a jury which does not do so in the court room. This is, indeed, too well settled for debate. [Citations omitted.] But, like other rules for the conduct of trials, it is not an end in itself; and, while lapses should be closely scrutinized, when it appears with certainty that no harm has been done, it would be the merest pedantry to insist upon procedural regularity."

### III.

The appellants allege that the trial court's denial of their motion for a Bill of Particulars, which was designed to ascertain the precise manner in which each defendant aided and abetted in the commission of federal crimes, prejudiced them and made it difficult to prepare an adequate defense. See Rule 7(f), Federal Rules of Criminal Procedure. The granting or denial of a Bill of Particulars is within the sound discretion of the trial judge, and his decision will not be disturbed on review unless abuse or prejudice can be shown. Leary v. United States, 5 Cir., 1967, 383 F.2d 851, 862; Downing v. United States, 5 Cir., 1965, 348 F.2d 594, 599; Joseph v. United States, 5 Cir., 1965, 343 F.2d 755, 756 (per curiam); Robertson v. United States, 5 Cir., 1959, 263 F.2d 872, 874; Johnson v. United States, 5 Cir., 1953, 207 F.2d 314, 321; Wong Tai v. United States, 273 U.S. 77, 82–83, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927). See generally 8 Moore, Federal Practice ¶ 7.06 [2] (2d ed. 1968). However, such specific showings of prejudice or abuse are most difficult, and hence, in practice, reversals of the trial court on this issue are rare. See, e. g., Roberson v. United States, 5 Cir., 1956, 237 F.2d 536; United States v. White, 7 Cir., 1966, 370 F.2d 559; United States v. Doyle, 7 Cir., 1956, 234 F.2d 788; Jencks v. United States, 5 Cir., 1955, 226 F.2d 540. Thus, since the appellants have failed to specify precisely in what manner the denial of the motion prejudiced them, and have merely asserted that access to the requested information would have made the preparation of their defense less difficult, we hold that the appellants have not met their burden, and that there was no abuse of discretion in the denial of their motion for a Bill of Particulars.

The traditional formula for testing the sufficiency of the evidence to sustain a jury verdict is whether there is "substantial evidence, taking the view most favorable to the Government." Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).[9] The testimony of the Government witnesses, including Sergeant Facemire, Lieutenant England, Sergeant Fuller, and Verbon Grimes, was clearly sufficient to indicate the guilt of the appellants. While the testimony of appellant Tillman significantly differed from that of the Government witnesses, the resolution of these contradictory statements involved credibility choices that were in the province of the jury. Hoffa v. United States, 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374 (1966); Belmarez v. United States, 5 Cir., 1966, 362 F.2d 544, 545 (per curiam); Bush v. United States, 1967, 126 U.S.App.D.C. 174, 375 F.2d 602; Hiram v. United States, 9 Cir., 1965, 354 F.2d 4, 6. Thus, there is no merit to the appellants' challenge to the sufficiency of the evidence.

The appellants find error in the trial judge's charge to the jury. We do not agree. First, it is alleged that there was error in failing to give appellants' requested charge number four:

"In this connection, in order for a person to aid or abet another in the commission of a crime, it is necessary that he associate himself with the unlawful venture; that he participate in it with the desire of accomplishment, and that he seek to make it succeed by his actions."

Rather, the court charged the jury that

"In order to aid and abet another to commit a crime, it is necessary that a

9. See also Lacaze v. United States, 5 Cir., 1968, 391 F.2d 516, 519; Moorman v. United States, 5 Cir., 1968, 389 F.2d 27, 32; Peters v. United States, 5 Cir., 1967, 376 F.2d 839 (per curiam); Walker v. United States, 5 Cir., 1962, 301 F.2d 94, 95; Ah Ming Cheng v. United States, 5 Cir., 1962, 300 F.2d 202; Gorman v. United States, 5 Cir., 1963, 323 F.2d 51; United States v. Birnbaum, 2 Cir., 1967, 373 F.2d 250; Hiram v. United States, 9 Cir., 1965, 354 F.2d 4, 7.

defendant willfully associate himself in some way with the criminal venture and that he willfully participate in it as he would . in something he wishes to bring about, and that he willfully seek by some action of his to make it succeed."

We find no meaningful distinction between the requested charge and the charge actually given. Apparently the language of the requested charge was derived from Moore v. United States, 5 Cir., 1966, 356 F.2d 39, 43 (Rives, J.), whereas the charge given was derived from Hall v. United States, 5 Cir., 1960, 286 F.2d 676 (Rives, J.). However, both of these opinions were written by Judge Rives, and both cited the opinion of Judge Learned Hand in United States v. Peoni, 2 Cir., 1938, 100 F.2d 401, 402, as a source of the charge therein approved. See also Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949). Thus, the conclusion is inescapable that whatever the specific language employed in the charges approved in *Moore* and *Hall*, their meaning is identical, and hence the trial court did not err in refusing to give appellants' requested charge number four.

■■■ Second, it is alleged that the court erred in failing to charge the jury on the issue of wilfulness as it related to Count Two of the indictment. In fact, what occurred was that the trial court referred the jury to the definition of wilfulness which it previously had given in relation to Count One. This was not in error since "The charge must be looked upon as a whole in order to determine if an issue is fairly presented to the jury." Beck v. United States, 5 Cir., 1963, 317 F.2d 865, 871. See also Rowell v. United States, 8 Cir., 1966, 368 F.2d 957, 970. Furthermore, even if the omission of a charge on wil-

fulness as to Count Two was improper, the court cured this defect by so charging the jury in its supplemental charge.

■■■ Finally, the appellants assert that the trial court's denial of their motions to examine each member of the jury panel individually on the voir dire deprived them of a reasonable opportunity to obtain an impartial jury and a fair trial. The pertinent rule is Rule 24 (a) of the Federal Rules of Criminal Procedure which states in part:

"The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination."

Thus, there is broad discretion vested in the trial judge in regard to the conduct of the voir dire examination, and we find no abuse of that discretion here. The Jury System in the Federal Courts, Report of the Judicial Conference Committee on the Operation of the Jury System, 26 F.R.D. 409, 466 (1960).[10]

Appellants' other assignment of error relates to the racial composition of the jury panel in the Atlanta Division in which the case was tried, and in view of our disposition of this issue in Simmons v. United States, 5 Cir., 1968, 406 F.2d 456, also an Atlanta Division case, we find it unnecessary to discuss the matter here. Suffice it to say that these objections are without merit.

Affirmed.

## ON PETITION FOR REHEARING AND EN BANC

### PER CURIAM:

On petition for rehearing, appellants ask us to reexamine our opinion dated January 9, 1969, with regard to the allegation that one of the jurors in the case expressed an opinion concerning the guilt of defendants during the trial. We stat-

---

10. See also United States v. Gillette, 2 Cir., 1967, 383 F.2d 843, 849; Aldridge v. United States, 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931); United States v. Carabbia, 6 Cir., 1967, 381 F.2d 133, 136–137; Pinkney v. United States, 5 Cir., 1967, 380 F.2d 882, 887; Stone v. United States, 5 Cir., 1963, 324 F.2d 804, 807; Fox v. United States, 5 Cir., 1961, 296 F.2d 217 (per curiam). See generally 8 Moore, Federal Practice ¶ 24.03 (2d ed. 1968).

ed in our opinion that the incident referred to happened in the afternoon of September 11, 1967. Appellants contend, however, that during the trial judge's interrogation of the jury in the afternoon of September 13, 1967, he assumed that the alleged communication by the juror took place on September 12, 1967, and that if, in fact, this assumption were correct, the probability that a juror was implicated would be greater. On this basis, appellants urge that we reverse their convictions or remand the case with directions to conduct a full evidentiary hearing on the juror misconduct issue. See, e. g., Morgan v. United States, 5 Cir., 1968, 399 F.2d 93. Appellants' arguments are not persuasive, and we adhere to the conclusions expressed in our prior opinion.

After a careful review of the record, we find that there is no conflict as to the date upon which the conversation between the garageman and the alleged juror occurred. Whatever confusion existed as to this point arose out of the failure to distinguish the communication between the garageman and an alleged juror on September 11, 1967, from the subsequent communication, a day later, between the garageman and a Fifth Circuit judge's secretary. Furthermore, while it is true that in the afternoon of September 13, 1967, the trial judge referred to the possibility of such an incident as having occurred on the previous afternoon, when he again questioned the jury and specifically asked whether any one of them had made a remark to a garageman at the Forsyth Building garage, we do not believe that this inadvertence, considering the totality of circumstances, should cause us to change our holding that the trial court's investigation of the alleged juror misconduct was adequate. In the context of a trial that had been going on for only two and one-half days, and the strong likelihood that the specificity of the court's question would have made any juror who had made the alleged statement remember the incident, and in view of the questions propounded earlier the same day, we con-

clude that our prior holding was correct. Our conclusion is reinforced by the fact that the trial judge advised counsel at the time of the motion for a mistrial that

"* * * I'll take whatever action is indicated should there be a verdict of guilty and should it develop from investigation by [defendants' counsel] or by the United States Attorney or anyone else regarding it."

Appellants never came forward with additional evidence nor did they file new post-trial motions or request a further hearing. Indeed, we may infer from this failure to pursue the matter further that appellants were satisfied with the court's investigation, or alternatively, that their own independent investigation, if they conducted one, corroborated the trial judge's denial of the motion for a mistrial.

The petition for rehearing is denied and no member of this panel nor judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure, Local Fifth Circuit Rule 12), petition for rehearing en banc is denied.