**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Kenneth Algene FORD, et al., Defendants-
Appellants.**

**No. 71–1567
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Dec. 7, 1971.

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Billy C. Bedsole, Mobile, Ala., for defendants-appellants.

Irwin W. Coleman, Jr., Asst. U. S. Atty., C. S. White-Spunner, Jr., U. S. Atty., Mobile, Ala., Edward J. Vulevich, Jr., Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge.

Appellants Ford, Malone and Shannon were jointly indicted and convicted on one count of possessing, selling and transferring 100 gallons of untaxed distilled spirits, in violation of 26 U.S.C. §§ 5604(a) (1), 5205(a) (2).

Appellants contend on appeal (1) that the Government unlawfully made a contingency fee arrangement with a paid

informer; (2) that the Court abused its discretion in denying their motion for a new trial, which was requested on the basis of the recantation of the paid informer; (3) that the Court erred in failing to rule as a matter of law that the evidence, including the recantation of the informer, on the motion for a new trial, established proof of entrapment; and (4) that the Court erred in failing to grant motions for severance filed on behalf of defendants Ford and Malone.

Defendants were indicted on October 9, 1969. On the morning of October 22, 1970, the date set for trial, counsel (who represented all three defendants) filed a motion for severance on behalf of Malone and Ford. The basis of the motion was that Shannon's defense would be entrapment whereas the defense of Malone and Ford would be a general denial. Out of the presence of the jury the Court asked defendants whether or not they were satisfied that defense counsel could fully protect their rights in view of the alleged possible conflict, and each answered affirmatively. The motion for severance was denied and the case proceeded to trial before a jury. The jury found each defendant guilty as charged. Subsequently, on November 10, 1970, Jackie Wayne Smith who, as an undercover agent of the Government, had purchased "moonshine" whiskey from defendants and who had testified at the trial, executed an affidavit in which he recanted a portion of his testimony. Based on Smith's affidavit, defendants filed a motion for new trial. By order of this Court the case was remanded to the District Court. The Trial Court held a hearing and denied the motion, whereupon defendants brought this appeal.

*Proceedings at the trial:*

Special Investigators for the Alcohol, Tobacco and Firearms Division of the Treasury Department testified that Smith was working as an undercover agent for the Department in February 1969. Smith was to be reimbursed expenses and to be paid an amount determined by the Regional Office for his assistance in contacting moonshine violators in the Meridian, Mississippi, area. Defendant Shannon's name was given to Smith as a person to contact for the purchase of moonshine. In response to a telephone call from Smith, Shannon's house and garage were put under surveillance on February 28, 1969. Smith was given $500 to purchase moonshine from Shannon. At about 6:30 p. m. all three of the defendants were seen at Shannon's garage where the moonshine was loaded into Smith's car. The contents of the vehicle were later identified as 100 gallons of nontax-paid whiskey.

The testimony of defendant Shannon, the only defendant to testify, and that of Government witness Smith, the informer, sharply conflicted in regard to the number of contacts between them prior to the sale of the moonshine. Smith said that he had contacted Shannon on two occasions on February 28, 1969; first, when he made arrangements for the purchase of 100 gallons of moonshine, and secondly, later in the evening when the transfer occurred at the back of Shannon's house, at which time defendants Ford and Malone participated in the transfer of the moonshine from a vehicle to Smith's truck. Shannon, on the other hand, testified as follows: He had been approached by Smith on three occasions in February prior to the two meetings on February 28. During the three prior contacts Smith had made it known that he wished to purchase moonshine whiskey and had asked Shannon if he could secure it for him. Shannon had replied that he had no whiskey of his own and knew of no one who had any to sell. However, on the third visit Shannon told Smith that he would see what he could do and would ask around. On February 28, Shannon told Smith that he thought he had located some whiskey for him. Smith said he wanted a hundred gallons that evening and would pay $5 a gallon for it, including a dollar a gallon to Shannon personally if he would obtain and load it. Shannon made arrange-

ments with codefendant Ford to have Smith pick up the whiskey at Ford's residence at Fordtown. However, Smith said he was afraid to drive all the way to Fordtown and insisted that the whiskey be delivered to Shannon's where Smith would pick it up. Later that evening, defendants Ford and Malone delivered 100 jugs of the moonshine to Shannon's residence at Why Not, Mississippi. Smith arrived in a truck as prearranged, and the transfer of the whiskey was made from one vehicle to another, with defendants Ford and Malone participating in the loading.

*Hearing on the motion for new trial:*

Evidence was offered by the defendants and the Government. Smith testified and recanted his former testimony that he had not contacted Shannon prior to February 28. He said he had instead seen Shannon on three prior occasions and had told him that he was in a "pretty bad financial bind" and would lose his house if he did not make some extra money from selling whiskey. Smith explained that the discrepancy between his testimony at the trial and at the hearing was the result of his having talked to many people on many occasions, and although he admitted he kept good notes he did not record the former contacts because they were by accident rather than during official business. In Smith's affidavit, which was introduced at the hearing, another reason given for his faulty memory at the trial was that Smith had been drinking prior to and at the time of the purchase from Shannon. The District Court considered the issue presented at the hearing to be a factual one which he resolved against defendants, finding specifically that Smith testified truthfully at the trial and falsely at the hearing on motion for new trial.

We affirm the District Court in all respects.

■ There is no evidence to support appellants' contention that the undercover agent Smith was paid a contingent fee. The evidence is to the contrary. The method of payment employed has been specifically approved by this Court. See United States v. Durham, 5 Cir., 1969, 413 F.2d 1003, 1004; Henley v. United States, 5 Cir., 1969, 406 F.2d 705, 706.

■■ We find no abuse of judicial discretion in the denial of appellants' motion for a new trial. The District Judge was in a position to weigh the veracity of the testifying witnesses. Numerous inconsistencies between the testimony of the Government witnesses and that of Shannon at the trial, and between Smith and the Government witnesses at the hearing, were evident, whereas the Government's testimony is consistent. The District Judge made a credibility choice, and his conclusions as a result of the hearing on the motion for new trial are abundantly supported by the evidence. His findings, based as they were on conflicting evidence, cannot be considered de novo on appeal in the absence of an abuse of discretion. See United States v. Smith, 5 Cir., 1970, 433 F.2d 149, 151, and cases cited therein.

■ Also addressed to the discretion of the Trial Court is the grant or denial of a motion for severance. The burden of demonstrating prejudice resulting from a joint trial is a difficult one, and the ruling of the Trial Judge will rarely be disturbed on appeal. Tillman v. United States, 5 Cir., 1969, 406 F.2d 930, 934–935; Bass v. United States, 5 Cir., 1969, 409 F.2d 179, 181; Wright v. United States, 5 Cir., 1968, 403 F.2d 43, 44. The motion for severance was made by retained counsel on the day of the trial, more than a year subsequent to the indictment, and was denied only after the Court received affirmative assurances from defendants that they did not feel they would be prejudiced by their joint representation by counsel. We find no abuse of discretion here.

■ Finally there is no merit to the contention that the District Court erred in failing to find as a matter of law that defendants were entrapped. This contention is not only incorrect, but

is inconsistent with defense counsel's position taken at the trial when he interrupted the Government's closing argument relating to entrapment on the ground that the matter was one for jury determination. The Trial Judge correctly submitted the issue of entrapment to the jury in clear, comprehensive instructions. See Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L. Ed.2d 859 (1958); United States v. Burgess, 5 Cir., 1970, 433 F.2d 987. No objection was made to the Court's charge or to the failure of the Court to give a requested charge. Consequently, the objection is waived on appeal in the absence of a showing of prejudicial error. Garcia v. United States, 5 Cir., 1963, 315 F.2d 133, 137; Fahning v. United States, 5 Cir., 1962, 299 F.2d 579, 582. We find no such error. Needless to say, we are not persuaded by appellants' contention that the Trial Court was required as a matter of law to find entrapment as a result of what transpired at the hearing. The District Court disbelieved the recantation of Smith and, in our opinion, with good reason.

Affirmed.